OPINION OF THE COURT
Memorandum.
Insofar as appealed from by defendant, the order of the Appellate Division should be reversed, the statements made by defendant on the airplane and' the physical evidence seized in the motel room suppressed and the case remitted for further proceedings on the indictment. The cross appeal taken by the People should be dismissed.
Following a jury trial, defendant was convicted of murder in the second degree, kidnapping in the first' degree and robbery in the first degree. The Appellate Division modified the judgment, on the law and the facts, by dismissing the kidnapping and robbery counts. We conclude that the remaining conviction for murder in the second degree must be reversed, because the trial court erroneously permitted the introduction of certain illegally obtained evidence.
One of the more damaging items of evidence introduced at the trial was an uncounseled, inculpatory statement made by defendant while he was being transported from Florida to New York following an extradition proceeding. By the time the statement was made, a warrant for defendant’s arrest on this charge had been issued by a Magistrate in New York. Moreover, it is undisputed that defendant was in custody at the time he made the statement and that he had previously requested the assistance of an attorney. Hence, defendant’s “indelible” right to counsel had attached and any waiver of that right made in the absence of counsel would have to be deemed invalid (People v Samuels, 49 NY2d 218; People v Cunningham, 49 NY2d 203; see People v Settles, 46 NY2d 154). Nevertheless, the *680 courts below concluded that the uncounseled statement in question need not be suppressed, since, in their view, it was made “voluntarily” and “spontaneously” (see People v Kaye, 25 NY2d 139). This conclusion, however, is simply not supported by the record.
According to the credited testimony of Officer Reidy, who was present when the statement was made, defendant initiated the conversation by asking the officer whether it was permissible to discuss the case. The officer replied in the affirmative, but reminded defendant that any statements he made could be used against him at trial. Defendant, in turn, acknowledged this admonition, but indicated that he wished to ask some questions about the pending charges. He then proceeded to ask Officer Reidy about the status of his case. Officer Reidy replied by informing him that the District Attorney had already obtained a 14-page statement from his alleged accomplice, Richard Graham, in which Graham acknowledged his own participation in the underlying robbery, but accused defendant of having been the sole perpetrator of the murder. Defendant responded immediately, stating: “Well, I would like to talk to somebody about this. I might have been involved, but I didn’t do — I didn’t kill anybody”.
This statement cannot be considered “spontaneous” under any view of the facts, since it was not a blurted-out admission, but was instead the product of an “extended discussion” between defendant and the police officer (People v Cunningham, supra, at p 210, n 2). It is not of controlling significance that the statement was “volunteered” in the sense that it was not made in response to direct interrogation, for, as we have previously observed, “the spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed” (People v Maerling, 46 NY2d 289, 302-303). Here, there can be no doubt that the police officer, by engaging in the discussion with defendant concerning the crime with which he was charged and by informing defendant of his alleged accomplice’s statement, evoked the uncounseled, inculpatory statement from the defendant. Accordingly, the statement made by defendant should have been suppressed.
*681 The trial court also erred in refusing to suppress certain items of physical evidence which were seized from defendant’s Florida motel room immediately after his arrest. The seized items included: a brown briefcase purportedly owned by Graham, a black briefcase purportedly owned by defendant, a safe deposit box key for a box registered in defendant’s name, receipts for American Express travelers’ checks issued to defendant, a card showing defendant’s and Graham’s addresses and several Western Union receipts for money orders allegedly sent by defendant to friends in New York. As the People have candidly conceded, the warrantless search of defendant’s motel room was “overbroad”, extending far beyond the permissible scope of a search incident to a lawful arrest (see Chimel v California, 395 US 752). Hence, the evidence seized during the course of the search must be suppressed.* We note, however, that any information related to the suppressed physical evidence which the police legitimately obtained through independent sources may be used in evidence against defendant if the People decided to retry him on the remaining murder counts.
Inasmuch as we have concluded that there must be a new trial because of the erroneous suppression rulings discussed above, we find it unnecessary to consider the numerous claims made by defendant concerning a variety of supposed trial error. It should be noted, however, that we find no merit to defendant’s contention that the entire indictment should have been dismissed at the close of the trial for lack of legally sufficient evidence. Nor can we agree that the indictment should have been dismissed on the ground that defendant was denied his constitutional right to a speedy trial, since, as the courts below found, the delays in the proceedings were attributable, for the most part, to defendant’s own actions.
*682 Finally, we hold that the People’s cross appeal from so much of the Appellate Division order as dismissed the kidnapping and robbery counts must be dismissed. The order from which the People appeal recites that the modification was made “on the law and the facts”, and an examination of the Appellate Division opinion indicates that the recitation in the order is accurate. Thus, we have no power to entertain the People’s appeal (CPL 450.90, subd 2, par [a]).

 We reject defendant’s additional argument that two safe deposit box keys for a box registered in Graham’s name should have been suppressed. These keys were taken directly from a purse owned by Roberta Holmes, a friend who had accompanied the two men on their sojourn to- Florida. Since Holmes was carrying the purse on her person at the time it was searched by the police officers, defendant has no standing to challenge the legality of the search; inasmuch as the safe deposit box in question was registered in Graham’s name and there is no showing that Lucas had any legal interest therein, he has no standing to challenge the seizure (cf. United States v Lisk, 522 F2d 228, cert den 423 US 1078).