■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIUS BRYANT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered January 4, 1980, convicting him of attempted murder in the second degree, robbery in the first degree (two counts) and assault in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain statements and physical evidence seized upon his arrest. Judgment affirmed. Following his arrest, defendant was transported to the local police precinct where he was placed in a detention cell. During the course of defendant's detention at the precinct, two of the arresting officers were processing the arrest at a desk in close proximity to the cell in which defendant was being held. At one point one of the police officers commented to the other, "Do you believe that a guy this size would have to stab an old man?" At that

point, defendant, who overheard the remark, stated, "Well, the old man slapped me, that's why I stabbed him." The officer who made the statement looked at defendant and said "What?" Defendant thereupon repeated his statement. Defendant moved to suppress these statements on the ground that the police officer's comment was, in essence, a questioning, which, due to its provocative nature and the physical proximity to defendant in which it was made, called for an answer. After a hearing, the court denied the motion. It is conceded by the People that at the time of his arrest defendant was not fully advised of his rights pursuant to *Miranda v Arizona* (384 US 436), the right to assignment of counsel having been omitted. Moreover, defendant refused to respond when asked if he understood those rights of which he had been advised. Consequently, any statements obtained from the defendant which were the product of interrogation would have to be suppressed. In *Rhode Is. v Innis* (446 US 291, 300-301) the court stated that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." However, an incriminating statement which is made spontaneously and is not the product of interrogation, may be admitted into evidence (*People v Maerling,* 46 NY2d 289). Thus, the issue here is whether defendant's statement admitting that he stabbed the complainant was the product of the functional equivalent of interrogation (there clearly being no express questioning) or was spontaneous. We find that it was spontaneous. For such a statement to be rendered admissible as spontaneous, it must be shown that it was made with genuine spontaneity, without apparent external cause (*People v Lanahan,* 55 NY2d 711; *People v Stoesser,* 53 NY2d 648; *People v Lucas,* 53 NY2d 678), and was "not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" (*People v Maerling, supra,* pp 302-303). However, not every remark by a police officer which is followed by a defendant's incriminating statement, constitutes interrogation even where the comment is made directly to the defendant (*People v Lynes,* 49 NY2d 286). Thus, in the case at bar, the mere fact that the police officer's comment was in a sense answered by defendant's statement does not necessarily bar a finding of spontaneity. The record is devoid of any facts which would tend to indicate that an interrogational environment existed at the time defendant's statement was made. The officer's remark was an isolated one and was not a part of any course of conduct from which defendant might have inferred that the police officer had any interest in eliciting a statement from him (cf. *People v Lynes, supra,* p 295). It is interesting to note that up to that point, defendant had not only refused to respond to the *Miranda* warnings, but had also refused to provide the police with basic pedigree information (his name) necessary to process the arrest. Thus, defendant was not an individual who the police should have known was likely to be suddenly moved to make an incriminating statement. There is nothing to indicate that the atmosphere in the precinct was charged (cf. *People v Lange,* 77 AD2d 632) or that the comment was induced by a "lengthy harangue in [defendant's] presence" (see *Rhode Is. v Innis,* 446 US 291, 303, *supra*). Nor was there any indication of an extended discussion between the officer and the defendant (see *People v Lucas,* 53 NY2d 678, *supra*). In sum, the record shows that the comment was in no way intended to induce or coerce a response, nor was the atmosphere in which it was uttered of such a nature as to require the officers to have reasonably anticipated that it would evoke such a declaration from the

defendant. In fact, the officer, upon hearing the defendant's remark, appeared genuinely surprised to the point of exclaiming "What?" "[T]he police surely cannot be held accountable for the unforseeable results of their words or actions" (*Rhode Is. v Innis, supra,* pp 301-302). Therefore, the court was correct in denying the motion to suppress the statements. We also find that the court was correct in denying the motion to suppress the physical evidence. The police initially stopped defendant because he fit the police radio description of the perpetrator of the crimes charged, which had been broadcast moments before they observed defendant. Although the People did not call as a witness at the hearing the police officer who had broadcast the radio communication (see *People v Havelka,* 45 NY2d 636; *People v Lypka,* 36 NY2d 210), defendant's challenge to the existence of probable cause for his arrest was directed to the sufficiency of the radio communication rather than its reliability. Therefore, the presumption as to its reliability remained (see *People v Jenkins,* 47 NY2d 722). Moreover, any possible taint of illegality which might have existed as a result of the initial stop of defendant was dissipated by defendant's intervening act in striking one of the arresting officers and fleeing (see *People v Boodle,* 47 NY2d 398; *People v Townes,* 41 NY2d 97). Finally, we hold that the court was correct in its finding that the identification witness had a sufficient independent basis for his identification of defendant, despite the improper showup which was conducted at the police precinct, and that an in-court identification was permissible. Gulotta, J. P., Thompson, Brown and Niehoff, JJ., concur.