■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADAM SOBOLOF, Appellant. — Appeal by defendant from a judgment of the County Court, Westchester County (Cowhey, J.), rendered October 5, 1982, convicting him of murder in the second degree, attempted murder in the second degree, criminal possession of a weapon in the fourth degree (two counts), and criminal possession of stolen property in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial of those branches of defendant's omnibus motion which sought the suppression of certain inculpatory statements made by him and physical evidence seized by the police (Delaney, J.), and of that branch of another motion by defendant which sought suppression of certain medical records (Rubin, J.).

Judgment affirmed.

On February 9, 1981, at approximately 9:00 A.M., the North Tarrytown Police Department was informed that defendant had stated that he had killed his parents. The North Tarrytown police conveyed this information to the Town of Greenburgh police, who proceeded to the Sobolof residence and discovered the bodies of Jerome and Michelle Sobolof, defendant's parents. Mr. Sobolof had been bludgeoned to death and Mrs. Sobolof was alive but in critical condition. The Town of Greenburgh Police Department issued an all-points bulletin for the arrest of defendant.

Thereafter, at approximately 11:10 A.M., Police Officers Whalen and Ready spotted defendant driving a yellow, 1976 Ford on Bellwood Avenue in North Tarrytown. The officers arrested defendant and advised him of his *Miranda* rights. Defendant was transported to the North Tarrytown police headquarters and the automobile was secured at the police garage. Defendant was thereafter taken to the Greenburgh police station. During the trip, neither officer inquired about the homicide. Upon arriving at the station, defendant was taken to the detectives' squad room, seated in a chair in the corner of the room, and handcuffed to a bar which was affixed to the wall. Defendant appeared to be "confused" and "not normal" and was therefore placed on a suicide watch. While defendant was in the squad room, various police officers engaged in conversations concerning their duties and assignments with respect to the homicide. Defendant was asked whether he was hungry and wanted a sandwich. He inquired about his mother and was told that she was alive. The detectives, however, did not directly

question defendant concerning the crimes. The record reveals that at least two of the officers involved were aware that defendant had previously been arrested for grand larceny by the same police department and assumed that he was represented by counsel on that pending charge. Defendant was in the detective division area on the second floor of police headquarters from approximately 11:45 A.M. to 3:30 P.M.

At approximately 2:30 P.M., Officer Manuel Perillo was assigned to guard defendant. He was told by a superior officer to bring defendant downstairs to the training room, whereupon the two engaged in a conversation concerning crimes in which defendant had been involved earlier in his youth. The defendant mentioned that he had used drugs and that he was "always involved in something". He alluded to the fact that this might have disturbed his parents. Officer Perillo testified that he did not question defendant about the homicide.

At approximately 4:00 P.M., defendant asked Officer Perillo if he could telephone his girlfriend. The officer checked with his supervisor and obtained approval. Perillo then asked defendant for the name of the person he wished to call as well as the telephone number. Perillo dialed the number and a female answered and identified herself as Linda Niskanen. When the officer turned the telephone over to defendant he did not leave the room or secrete himself. The officer testified that defendant then advised Ms. Niskanen "that he was under arrest, basically, and that he had killed his father and that his mother was still alive and that he had used a hammer axe to do the job". According to Officer Perillo, it was "standard" procedure in the Greenburgh Police Department that a person in custody not have privacy when making a telephone call. It was also standard procedure to take down the name and telephone number of any party a suspect might call.

Defendant contends that his confession was the product of an interrogation environment and that the hearing court improperly denied that branch of his omnibus motion which was to suppress the admission. "Knowledge that one in custody is represented by counsel, albeit on a separate unrelated charge, precludes interrogation in the absence of counsel and renders ineffective any purported waiver of the assistance of counsel when such waiver occurs out of the presence of the attorney" (*People v Bartolomeo,* 53 NY2d 225, 231; *People v Rogers,* 48 NY2d 167). The corollary to this rule is that absent a police interrogation the right to counsel conferred by the *Bartolomeo* and *Rogers* cases is not violated. Volunteered statements are admissible provided the defendant speaks with genuine spontaneity and not as a result of "inducement, provocation, encour-

agemènt or acquiescence, no matter how subtly employed" (*People v Maerling,* 46 NY2d 289, 302-303). Spontaneity, in this context, turns on whether defendant's statement was "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" (*People v Lynes,* 49 NY2d 286, 295; *People v Hopkins,* 86 AD2d 937, *affd* 58 NY2d 1079). Merely because defendant was amidst officers who were in the process of carrying on routine police functions, and discussing these functions, does not lead to the inexorable conclusion that defendant's will was overborne or that he was coerced into confessing. Significantly, the confession was not even made to an officer, nor was it made at a time when defendant was exposed to what he claims were compelling influences. "[N]ot every remark by a police officer which is followed by a defendant's incriminating statement, constitutes interrogation" (*People v Bryant,* 87 AD2d 873, 874, *affd* 59 NY2d 786). As the United Stated Supreme Court has recognized, "the police surely cannot be held accountable for the unforeseeable results of their words or actions" (*Rhode Is. v Innis,* 446 US 291, 301-302).

That Officer Perillo and defendant had conversed, in this court's view, is also insufficient to bar a finding of spontaneity since "some exchanges between a defendant and his jailers must of necessity occur" (*People v Garofolo,* 46 NY2d 592, 603).

Moreover, defendant's reliance on the case of *People v Grimaldi* (52 NY2d 611) is misplaced. The officer therein arranged for defendant to have access to a telephone and then secreted himself while defendant made the damning statement over the telephone. As planned, the officer overheard the conversation and recorded the admission in his notebook. There is no evidence in this record that the officer "endeavored, by subtle maneuvering or otherwise" to overhear defendant's conversation (*People v Harris,* 57 NY2d 335, 342, *cert denied* 460 US 1047). Defendant was fully aware of Officer Perillo's presence since he placed the call at defendant's request. The officer did not suggest that defendant call anyone nor did he have any control over the substance of the conversation. Rather, the statement was, in effect, forced upon the officer (*see, People v Maerling,* 46 NY2d 289, 303, *supra; People v Mercado,* 112 Misc 2d 368, 375). Accordingly we find that defendant was not subjected to questioning or its functional equivalent.

Defendant next assigns error to the denial of that branch of his separate motion which was to suppress the use of his Correctional Health Services records. The records were legally obtained by means of a subpoena duces tecum and not pursuant to

an illegal search or seizure. Moreover, they were not even the property of the defendant. Defendant failed to allege a legally sufficient ground for their suppression under CPL 710.20 and accordingly suppression was properly denied without a hearing.

We also reject defendant's challenge to the denial of that branch of his omnibus motion which was to suppress the items seized from his mother's car, since these items were seized pursuant to a valid search warrant.

Lastly, we conclude that defendant's constitutional right to a speedy trial was not violated (see, CPL 30.20). We find that the delays were largely attributable to defendant and that he was not prejudiced as a result thereof (see, People v Taranovich, 37 NY2d 442). Mangano, J. P., Gibbons, Brown and Lawrence, JJ., concur.