OPINION OF THE COURT
Richard A. Goldberg, J.
An indictment has been filed against the defendant charg *141 ing him with robbery in the first degree and robbery in the second degree. The charge is that on January 18, 1988, at 7:15 p.m., in front of premises 625 Bergen Street, Brooklyn, the defendant and another unapprehended person robbed the complaining witness at gunpoint. On February 3, 1988, the complaining witness, Mr. Eli Selinger, identified the defendant’s photo in a photo array presented to him by Police Officer Cornelius Carter as possibly being the person who robbed him. Carter then arrested defendant on February 8, 1988 and brought him to the 77th Precinct for a lineup where defendant was positively identified by Selinger.
Defendant, in his omnibus motion, moved for and was granted a combined Huntley and Wade hearing. In the course of the hearing the court granted defense counsel’s motion to expand the hearing to include Dunaway issues.
Defendant contends that his statements as well as his identification by the complaining witness at the lineup should be suppressed as being the product of an illegal arrest in that the arrest was made without probable cause. Defendant further claims that the statements should also be suppressed because the police knew or should have known that defendant had a pending case at the time the statements were made and therefore should not have questioned defendant without his lawyer being present.
At a Dunaway hearing the People have the burden of showing that there was probable cause to arrest the defendant.
At a Wade hearing the People have the burden of going forward to show that the pretrial identification procedure was not constitutionally impermissible. Defendant, however, bears the burden of establishing by a preponderance of the evidence that the procedure was impermissible. If such procedure is shown to be improper, the People have the burden of proving by clear and convincing evidence that the prospective in-court identification testimony, rather than stemming from an unfair pretrial confrontation, has an independent source.
At a Huntley hearing, the People have the burden of proving beyond a reasonable doubt that the accused voluntarily waived his privilege against self-incrimination. (People v Huntley, 15 NY2d 72.)
A hearing was held before this court on September 16, 1988. The People presented testimony from Police Officer Cornelius Charles Carter, III, which testimony the court credits. After *142 reviewing the testimony adduced, exhibits submitted and hearing the arguments of respective counsel, the court makes the following findings of fact and conclusions of law:
FINDINGS OF FACT
Police Officer Cornelius Charles Carter, III, was assigned to investigate an incident which occurred on January 18, 1988, wherein the complaining witness, Mr. Selinger, was allegedly robbed at gunpoint in front of his business premises, 625 Bergen Street, Brooklyn.
After interviewing the complaining witness, Carter "checked out” a Bureau of Criminal Investigation report regarding this defendant on February 2, and obtained a photograph of the defendant from the Brooklyn Catch Unit. The photo indicated that defendant had been arrest approximately seven months previously, in June 1987. Carter did not, however, check to see if the June 1987 case was still pending.
Carter incorporated the photo in a photo array consisting of six photos of individuals with similar features. On February 3, 1988 Carter went to Selinger’s place of business, showed him the photo array, and asked Selinger if he recognized anyone. Selinger picked out photo No. 2, the photo,, of the defendant, and stated, "This looks like the guy.” He then said he was not 100% sure and that he would not be 100% sure until he saw him face to face.
On February 8, 1988 Carter went to defendant McEachern’s residence at 585 Bergen Street. Defendant’s mother answered the door, and when advised that Carter was looking for Reginald McEachern, she invited him in. Carter then informed defendant, who was also present, that he needed to take him to the 77th Precinct for a lineup. Defendant then stated to his mother, "This is probably about the old man that got robbed.” Defendant voluntarily accompanied Carter outside the apartment to the police car where Carter placed defendant in handcuffs at approximately 11:40 a.m. and took him to the 77th Precinct. Carter read defendant his Miranda rights at or about 12:00 noon at the precinct, and defendant responded that he understood his rights as they were read to him.
Defendant was placed in a lineup containing five other individuals with similar features at the 77th Precinct. At 6:10 p.m. the complaining witness Selinger viewed the lineup *143 through a one-way mirror and positively identified No. 4, the defendant, as being the person who had robbed him.
After Police Officer Carter had read defendant his Miranda rights, defendant made statements to Carter to the effect that he (defendant) was told that a guy named "Willie” had set him up. He stated that he was willing to talk to a District Attorney, and at 10:26 p.m. at the 77th Precinct, a videotaped statement was made to Assistant District Attorney Weinberger. The video tape statement was substantially in conformity with defendant’s prior oral statement to Police Officer Carter and additionally defendant conceded that he knew the complaining witness.
CONCLUSIONS OF LAW
Police Officer Cornelius Carter had probable cause to arrest defendant outside his home at 585 Bergen Street. Defendant voluntarily accompanied Carter outside his apartment and when they got to the police car the arrest was effected. The complaining witness’s identification of the defendant’s photo from the array was alone sufficient to establish probable cause for the arrest. (People v Palacio, 121 AD2d 282.) Although the identification was not made with complete certainty, it was sufficient to establish probable cause to arrest defendant for the crimes alleged. (People v Rhodes, 111 AD2d 194; see also, People v Brewster, 100 AD2d 134, 141, affd 63 NY2d 419; People v Tatum, 129 Misc 2d 196; People v Middleton, 125 Misc 2d 634.) Any doubt that the arresting officer may have had based on Selinger’s statement that he could not be 100% certain until he saw defendant face to face clearly had to be dispelled when defendant, voluntarily and spontaneously, stated to his mother in the police officer’s presence, "This is probably about the old man that got robbed.” This statement was not made while defendant was in custody. It was not elicited as a result of any police questioning or its functional equivalent (People v Bryant, 87 AD2d 873, affd 59 NY2d 786), nor was it even made to a police officer. It did, however, have the effect of confirming a relationship between this defendant and the crime under investigation.
Based upon the totality of information available to Police Officer Carter, it appeared probable that a crime had been committed and that the defendant was its perpetrator. (See, People v Palacio, supra.)
The court finds that all the statements made to Police *144 Officer Carter at the 77th Precinct were made after a knowing and voluntary waiver of defendant’s rights and subsequent to defendant having been read his Miranda rights.
Similarly, after viewing the videotape, the court finds that prior to interrogation, Assistant District Attorney Weinberger properly advised defendant of his Miranda rights and the defendant again affirmatively agreed to waive those rights. The tape clearly showed the defendant being read his rights and stating that he understood them prior to his making his statement. The tape indicates the defendant appeared relaxed, understanding, well aware of what was going on and under no duress or coercion. The court notes that when the defendant refused to answer any more questions the Assistant District Attorney immediately stopped her questioning.
Defendant contends that under the holding in People v Bartolomeo (53 NY2d 225) both the oral and the video tape statements should be suppressed because the persons to whom the statements were made, the police and Assistant District Attorney involved, had constructive notice that at the time of the statements, the defendant had a criminal case pending in this county and was or was likely to be represented by an attorney in that case. Defendant contends that as a consequence the police or Assistant District Attorney should have inquired further, and having failed to do so, were prohibited from taking any statement from defendant without defendant’s attorney being present.
Specifically, defendant contends that the mug shot photograph supplied by the police photo unit, which was the basis for defendant’s arrest, bore the date June 1987, as well as an NYSID (New York State Identification) number, which would indicate that defendant had been arrested seven months earlier. Defendant contends that the detectives were obliged to punch the NYSID number into a computer which would have revealed that defendant had a pending case involving a "B” felony in which more than likely he had an attorney.
The People contend that since they had no actual notice of pending charges against defendant or that he was being represented on them by counsel at the time the statements were taken, they were under no legal obligation to inquire or investigate further despite their possession of the aforementioned "mug” shot photo, and that their failure to do so did not constitute "bad faith” so as to warrant suppression of the oral or the video tape statement.
*145 It has long been the law in New York State that once an attorney has entered the proceedings under investigation on defendant’s behalf, the police may not interrogate a criminal defendant in custody unless there is an affirmative waiver by defendant in the presence of his attorney. (People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479.) In People v Rogers (48 NY2d 167) this prohibition was extended to proscribe police interrogation where the police had actual knowledge that defendant was being represented by counsel on a completely unrelated pending charge. The rule was further extended in People v Bartolomeo (supra), where a majority of the Court of Appeals held that where the police had actual knowledge of the defendant’s very recent arrest and pending arson charge, they had an affirmative obligation to inquire as to whether defendant had obtained representation on that unrelated pending charge and having failed to do so, were charged with constructive knowledge that he was so represented. Thus, in People v Smith (54 NY2d 954), a majority of the Court of Appeals held that defendant’s incriminating statements made while under custodial interrogation, to a police officer who was aware that defendant had previously been arrested on a pending felony charge some eight months earlier, although he did not actually know that defendant had an attorney, should have been suppressed upon the reasoning that since the officer had actual notice of the pending charges, he was obligated to question defendant about his counsel on the earlier charge. In People v Servidlo (54 NY2d 951), decided concurrently with People v Smith (supra), the line was drawn when the court refused to impose a duty to inquire in a custodial interrogation situation when the questioning officer was unaware of the existence of pending misdemeanor charges on which defendant was being represented by counsel. Implicit in that decision, however, was the finding that actual knowledge of the pending charges was not overlooked or avoided by the police, thus in effect creating a "good faith” exception to the constructive notice rule of Bartolomeo (supra).
Subsequent decisions have tended to restrict rather than expand the Bartolomeo doctrine so that custodial interrogation is not barred where the defendant falsely denies being represented on a pending charge so long as such denial is reasonable (People v Lucarano, 61 NY2d 138) or where different law enforcement agencies were involved (People v Fuschino, 59 NY2d 91), provided they were not working so closely *146 as to constitute a joint investigation (People v Miles, 112 AD2d 585, affd, 67 NY2d 920), and even when the same District Attorney’s office was involved, so long as the person handling the new complaint was not personally aware of the pending charge or that there was any attempt to insulate its personnel or the police from such knowledge. (People v Cunningham, 60 NY2d 930.) In People v Bertolo (65 NY2d 111) the court reviewed the factors it considered to be critical in determining when, absent actual knowledge, legal representation on prior pending charges should bar custodial interrogation. It listed the most salient as: The extent of the police knowledge; the proximity, severity, and notoriety of the prior charges; and the good or bad faith of the police. It summarized the law as follows: "Where the police are aware that defendant has counsel on other unrelated charges, they may not question the defendant without his attorney being present. Where the police are unaware that defendant has legal representation but are aware that prior charges are pending against him, they must ask defendant whether he has counsel. Absent some actual knowledge * * * of either defendant’s representation by counsel or the pendency of prior charges, the police have no affirmative duty to cease their questioning or inquire whether the defendant has an attorney.” (Supra, at 119.)
The court went on to state, however, that "[i]n the absence of some actual knowledge or any bad faith on their part, the police were under no obligation to take additional measures to ascertain whether defendant’s prior unrelated offenses were still pending an whether he was represented thereon by counsel.” (People v Bertolo, supra, at 121; emphasis supplied.)
This case raises the issue of what circumstances constitute bad faith on the part of the police so as to mandate suppression under Bartolomeo (supra) or deny suppression under Bertolo (supra), when there is no actual notice by the police of pending charges against defendant.
It is incumbent upon the court then to compare the facts of this case with the factors set forth in People v Bertolo (supra). The first factor listed is the extent of police knowledge. Here, the court has found no actual knowledge of pending charges against the defendant or representation by counsel. It is nevertheless clear that the production by the police photo unit of a mug shot photo dated June 1987 indicated at the very least that defendant had been arrested on that date for a crime. However, the photo by itself does not indicate the *147 seriousness of the crime or that the charges were still pending.
The second group of factors listed in Bertolo (supra) is the proximity, severity and notoriety of the prior charges. Here, the date shown on the mug shot is approximately seven months prior to the date of defendant’s arrest and statement in this case. While no statistics were presented to the court, it is fairly common knowledge in law enforcement circles that the majority of charges triggering an arrest photo are resolved within a period of seven months. It is therefore entirely reasonable to presume, absent indications to the contrary, that a defendant-at-large in the community seven months after arrest has had the matter resolved and that the charge was relatively minor.
The severity of the pending charge only becomes a relevant factor in this context when the police or prosecutors involved in the current case are aware of the nature of the charges in the pending case. A Sandoval hearing held before this court immediately prior to this hearing showed that defendant was arrested on June 26, 1987 for robbery in the first degree, robbery in the second degree, and criminal possession of a weapon in the fourth degree. The defendant was granted an adjournment in contemplation of dismissal on that case on August 9, 1988 so that the prior case was till pending at the time of defendant’s arrest on the instant case. The prior charges had apparently been reduced to misdemeanor status prior to the arrest in this case. Apparently there was nothing notorious about defendant’s prior case to alert the investigators of this case to the possibility the prior charges were still pending.
The last factor enunciated in Bertolo (supra) is the good or bad faith of the police. This is a "catch-all” which overlaps all the other factors. The testimony in this case is that defendant was given Miranda warnings before the oral statement was taken and again before the video tape statement was taken. Defendant was advised of his right to have a lawyer and that if he could not afford one, one would be provided for him. As an accused recidivist he was certainly aware of whether or not he had a pending case and whether or not he had a lawyer. When the question of legal representation was brought to his attention via the Miranda warnings he could easily have responded in such a manner as to alert the interrogator as to whether or not he had a lawyer, without incriminating himself. This he failed to do although he was quite vocal in *148 describing his connection with the instant charge. While defendant was under no obligation to respond to Miranda warnings, the fact that he responded affirmatively that he understood his rights would tend to lead any interrogator to infer that defendant did not have a lawyer representing him at the time. The court finds this defendant’s responses to the Miranda warnings to be a significant factor in determining whether the interrogators were acting in good faith in proceeding with the interrogation.
While it may be a simple matter for the police to punch a NYSID number into a computer to see what, if any, prior record defendant has and the status of same, as any Trial Judge knows only too well, such information is often unreliable. A review of "rap” sheets often comes up with a "No disposition reported” when in fact the case at issue has long been resolved. What course of action should be required in the event of conflict between defendant’s responses and the NY-SID printout? To proscribe interrogation or compel further investigation in such circumstances would needlessly "tie” police hands in a vital area of law enforcement. It would place the police under the same duty to inquire every time a witness picks out a defendant’s picture from a photo array. In fact the duty could inferentially be applied even further so as to include all arrested defendants since a statistically significant percentage of them turn out to be repeat offenders. In short, the extent of the police knowledge derived merely from the photo, which was that defendant had been arrested some seven months earlier, is not much greater than what a police officer could infer in most arrests. The proximity, notoriety and severity of the prior charges were apparently not such as to cause the police or prosecutor to believe that they were still pending. The Court of Appeals in Bertolo (supra) held there was no duty to inquire absent actual knowledge or bad faith. The failure of the police to inquire in these circumstances cannot by itself constitute an act of bad faith on their part. Accordingly, this court finds no bad faith on the part of the police or prosecutor and holds that police or prosecutorial knowledge of the existence of a police mug shot dated seven months earlier containing a NYSID number does not by itself require further action on their part to verify the existence of pending criminal charges against a defendant or that he is being represented on them by counsel. The motion to suppress the oral and the video tape statements of defendant is denied.
Predicated on this court’s findings and conclusions this *149 decision is not inconsistent with current case law in this State. However, it may well be time to reassess the rulings in Rogers (supra) and Bartolomeo (supra) rather than limiting them piecemeal as has been the case since they came out. The accessibility of information in this computer age compels a reconsideration of value judgments in this area. This may be done either by revising the Miranda warnings to include reference to legal representation in pending cases or acknowledging the reality that an attorney who is handling a pending case for a client is married to the case, not the client. As Judge Wachtler so cogently pointed out in his dissent to Bartolomeo, there is no logical or constitutional necessity to extend representation in a totally unrelated case to be the equivalent of representation in the instant case. On the contrary, to require that law enforcement personnel, whether police or prosecutors, become investigators into unrelated cases and attorney-client relationships peculiarly within the ken of the accused, places an onerous and unnecessary burden on them. It provides extra protection for the criminal defendant who least needs it, the recidivist, and effectively denies such protection to the first or sporadic offender who needs it most.
Based upon the foregoing, the defendant’s motion to suppress the in-court identification of the defendant by the complaining witness, as well as the statements made to Police Officer Carter and Assistant District Attorney Weinberger, are denied in their entirety.