OPINION OF THE COURT
Gustin Reichbach, J.
Must the police warn defendants that their station house calls will be monitored and anything they say in those phone calls will be used against them when offering a phone call to defendants who have previously invoked their right to an attorney and explicitly declined to answer questions?
It is a standard part of the booking procedure for the New York City Police to arrange for an arrestee to make a phone *982 call. It is apparently a further part of standard police procedure to monitor that phone call for security reasons. Our Court of Appeals has repeatedly expressed "special solicitude” for the right to counsel and a defendant’s right against self-incrimination as contained in section 6 of article I of the New York Constitution. (People v Cunningham, 49 NY2d 203, 207 [1980]; People v Hobson, 39 NY2d 479 [1976]; People v Blake, 35 NY2d 331 [1974].) Consequently, this court holds that when a police officer arranges a phone call for a defendant who has previously invoked his right to counsel and to remain silent, the police must inform the defendant that his phone call will be monitored and any statement he makes can be used against him. In the absence of such warnings, any statement overheard by routine police monitoring must be suppressed.
STATEMENT OF FACTS
The defendant is charged with violations of Penal Law §§ 120.00, 120.15 and 155.25. On December 20, 1990 Police Officer Charles Tyri of the 83rd Precinct arrested the defendant, Felix Aponte. Officer Tyri testified to the facts recited herein and I find him to be a forthright, candid, and highly credible witness. After the defendant was given his Miranda rights at the 83rd Precinct, he indicated that he wanted an attorney and, further, that he did not want to speak to the officer or make a statement about the case. Thereafter, Officer Tyri, as part of the routine booking practice, offered to arrange an opportunity for the defendant to place a phone call. At this time the defendant was being lodged in a holding cell in a booking room at the back of the precinct. The defendant accepted the police officer’s invitation to make a phone call and, from the holding cell, provided the officer with the name and number of the party that he wished to call. The officer placed the phone call and, after ascertaining that the party called was on the line, handed the receiver through the bars of the holding cell to Mr. Aponte. The phone receiver, stretched to the end of its tether, reached inside the holding cell while the base remained on the officers’ desk, 4 to 6 feet away. Officer Tyri also remained at the desk.
Officer Tyri, having followed this procedure "numerous” times before, knew that he would be able to hear Mr. Aponte’s end of the phone conversation. Indeed, the officer testified that it was his duty to routinely listen to an arrestee’s phone conversations for security reasons, and that this monitoring *983 was standard police procedure as instructed at the police academy.*
Notwithstanding defendant Aponte’s unequivocal invocation of his right to an attorney and his right to remain silent, the police did not inform Mr. Aponte that the phone call they arranged for him would be monitored and that any statements he made would be used against him. During the phone call the defendant made a statement that the District Attorney now seeks to introduce into evidence.
DISCUSSION
It is now firmly established in New York that a defendant who has invoked his right to counsel may not waive that right in the absence of counsel. (People v Cunningham, 49 NY2d 203 [1980], supra; People v Settles, 46 NY2d 154 [1978].) Any statement obtained disregarding this rule violates the State Constitution and must be suppressed. (People v Hobson, 39 NY2d 479 [1976], supra.)
A narrow exception from this general rule exists for truly spontaneous statements blurted out by a defendant without any "inducement, provocation, encouragement or acquiescence [by the authorities], no matter how subtly employed.” (People v Maerling, 46 NY2d 289, 302-303 [1978].) However, the fact that a statement is volunteered or not made in direct response to questioning does not automatically render it spontaneous. *984 (People v Lucas, 53 NY2d 678, 680 [1981]; People v Rogers, 48 NY2d 167, 174 [1979].) Rather, to satisfy the test of a blurted admission, the statement must be in effect forced upon the officer. (People v Maerling, supra, at 303.) Overheard comments made to third parties by the defendant are among such statements. (People v Grimaldi, 52 NY2d 611 [1981]; People v Borcsok, 107 AD2d 42 [2d Dept 1985].)
*983 "Q. (The court): Now the procedure you’ve outlined, that you follow in terms of processing earlier arrests * * *
"A. (Officer Tyri): Yes, Your Honor.
"Q.: Now, is it your experience, based on prior arrests * * * that you are able to hear those conversations routinely, the conversations conducted by the defendant in the holding cell on the phone?
"A.: Yes * * *
"Q.: And, would it be fair to say that you assumed that you would be able to hear this phone conversation of Mr. Aponte’s based on prior experience?
"A.: Yes.
"Q.: [D]id you indicate to him in any fashion that you would be monitoring the phone call or that you would be able to hear the phone call?
"A.: Not to my knowledge * * *
"Q.: Let me ask you, in terms of the procedure that you’ve outlined, as you indicated, one of the purposes is you want to monitor the calls for security reasons. Is that an instruction that you’ve been given by your superiors, or is that a practice you’ve undertaken?
"A.: That’s instructed at the Academy.”
*984 The courts, when addressing the issue of overhearing arrestees’ phone calls, have focused on the question of whether the police endeavored, by subtle manuevering or otherwise, to overhear such conversations (People v Harris, 57 NY2d 335 [1982]), and whether the police "arranged, acquiesced in and took affirmative advantage of the phone call”. (People v Grimaldi, supra, at 617.)
People v Harris (supra) and People v Grimaldi (supra) seem to define the two extremes in determining whether a conversation overheard by the police can be admitted. In Harris, the defendant was advised of her Miranda rights, waived those rights and made a statement to the police. Thereafter, when asked if she would like to make a phone call she indicated that she did. The officer escorted the defendant into a bedroom in the residence where the phone was located and placed the call for her. A third party, the house manager, was present in the room standing a few feet away from the telephone. The phone was given to the defendant and, as the officer was backing out of the room, he "inadvertently overheard [a] statement.” (People v Harris, supra, at 342.) The court determined that the police officer had no opportunity to remove himself from earshot before the defendant made the damaging statement and that there was nothing in the record to indicate that the officer had endeavored, "by subtle maneuvering or otherwise,” to overhear the conversation (supra, at 342). The court further emphasized that since the defendant made the statement in the presence of yet another person (the house manager) there was nothing to indicate that she intended the communication to be confidential.
By contrast, in People v Grimaldi (supra), the defendant was arrested, arraigned and assigned counsel. Nonetheless, the police attempted, in the absence of counsel, to question the defendant who refused to make any statement. After further attempts to induce the defendant to make a statement, the investigating officer arranged for the defendant to be returned to his cell and for a phone to be provided so the defendant could call his father. When the phone arrived, the investigator *985 stood away from the defendant’s cell and hid outside the defendant’s view. The officer did not inform the defendant that he would be listening during the call. The defendant’s incriminating statements were admitted at trial. The Court of Appeals reversed the defendant’s conviction, determining that since the police arranged, encouraged and took affirmative advantage of the phone call, the statements could not be considered either spontaneous or forced upon the officer and must be suppressed. (People v Grimaldi, supra, at 617.)
In the instant case, while the police officer did not secrete himself outside of the defendant’s view, the accumulation of other factors brings this case within the penumbra of the court’s reasoning in Grimaldi (supra). Unlike the defendant in Harris (supra), the defendant here specifically invoked his Miranda rights, declined to make a statement and asked to speak to an attorney. As in Grimaldi, it was not the defendant who requested a phone call, but rather the police officer who invited and arranged for the defendant to make a call. The record in this case clearly establishes that the police officer, in offering the defendant a phone call, knew in advance that he would be able, and indeed intended, to overhear the conversation. The officer did not inform the defendant of these facts nor that any statement made would be used against him. Under the circumstances it is hard to avoid the conclusion that the police "arranged, acquiesced in and took affirmative advantage of the phone call”. (People v Grimaldi, supra, at 617.)
In its seminal decision, Miranda v Arizona (384 US 436 [1966]), the Supreme Court analyzed in substantial detail the psychological pressures which arise as an inevitable consequence of the accused citizen finding himself in police custody. The court recognized that custody "contains inherently compelling pressures which work to undermine the individual’s will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights”. (Supra, at 467.)
In recognizing that the privilege against self-incrimination was "one of our Nation’s most cherished principles” (supra, at 457-458) and "the essential mainstay of our adversary system” (supra, at 460) the court, in Miranda, explained the need for the police to warn a suspect, in language particularly applicable to the case at bar: "The warning of the right to remain *986 silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system — that he is not in the presence of persons acting solely in his interest.” (Miranda v Arizona, supra, at 469 [emphasis added].)
Here, after informing the police that he did not want to make a statement, the defendant was told that he could make a phone call arranged by the police. The officer knew that he would, and indeed intended to, listen in on the call, but the defendant was not so advised. The solicitude of the police in arranging the call, coupled with no warning, may well obscure to the defendant the reality that he is indeed enmeshed in the adversary system and "not in the presence of persons acting solely in his interest.” (Supra.)
"The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning * * * so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.” (Miranda v Arizona, supra, at 468 [emphasis added].) While this court notes that the Appellate Division, Second Department, reached a different conclusion in People v Sobolof (109 AD2d 903), two critical factors present in this case distinguish it from Sobolof. In Sobolof the defendant had not invoked his right to remain silent nor had he requested an attorney. Furthermore, in Sobolof it was the defendant who affirmatively requested of the police that he be permitted to make a phone call. In contrast, in the instant case it was the police who offered the defendant an opportunity to make a phone call knowing at the time that they would be monitoring the defendant’s statements.
Under these circumstances the court concludes that the defendant’s statement cannot fairly be characterized as spontaneous or forced upon the officer. (People v Maerling, supra.)
The court recognizes that the police have a legitimate security concern in monitoring detainees’ phone calls. Jailhouse facilities simply do not permit the placing of confiden *987 tial calls and nothing in this opinion requires the police to provide such a facility. However, it creates no burden on police resources to require that the police warn a defendant for whom they are arranging a phone call that the call will be monitored and any statements can be used against him.
This court concludes that such warnings to a defendant who has invoked his right to remain silent and requested an attorney must be given before any incriminating statement can be admitted. Since the police failed to do so in this case, the statement is accordingly suppressed.

 The relevant portions of the colloquy between the court and Officer Tyri at the hearing are as follows: