■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY HARVEY, Appellant. [638 NYS2d 963] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Demakos, J.), rendered November 9, 1993, convicting him of murder in the second degree (two counts), arson in the first degree, and arson in the third degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial, after a hearing (Berkowitz, J.), of that branch of the defendant's omnibus motion which was to suppress his written and subsequent oral statements to the police.

Ordered that the judgment is affirmed.

We agree with the defendant that his written and subsequent oral statements to the police, which he made outside the presence of his attorney after his right to counsel had attached, were not "spontaneous" and therefore should have been suppressed *(see, People v Ferro,* 63 NY2d 316, *cert denied* 472 US 1007; *People v Lucas,* 53 NY2d 678). However, under the circumstances of this case, the error in admitting these statements into evidence at trial was harmless beyond a reasonable doubt *(see, People v Anderson,* 200 AD2d 750; *People v Holland,* 179 AD2d 822).

The defendant was convicted of arson in the first and third degrees, and two counts of felony murder. A person is guilty of arson in the first degree when he intentionally sets fire to a building, and he causes serious physical injury to a nonparticipant, when this other nonparticipant is present in the building at the time, and the defendant knows that the nonparticipant is present or the circumstances are such as to render the presence of the nonparticipant a reasonable possibility *(see,* Penal Law § 150.20 [1]). A person is guilty of arson in the third degree when he intentionally damages a building by starting a fire *(see,* Penal Law § 150.10 [1]). A person is guilty of felony murder when, in the commission of a felony, he causes the death of a person *(see,* Penal Law § 125.25).

It is undisputed, especially through the defendant's oral admission made before he requested counsel, that he intentionally set fire to his house, possibly in an attempt to commit sui-

cide. The fire marshall's testimony also clearly established that the fire was deliberately set by the use of a flammable liquid such as gasoline. With respect to the defendant's awareness that people were present in the house at the time of the fire, the evidence indicates that defendant made his escape from the house by jumping from a window located on the second floor. This floor contained the three bedrooms of the home and in two of these bedrooms the firemen discovered the bodies of Julian and Theresa Harvey. Moreover, the defendant admitted to one of his psychiatrists that after he set the fire, he ran through all the floors of the house. Under these circumstances, it appears clear that the defendant was aware of the reasonable possibility that his wife and son were present in the house at the time he set the fire.

Furthermore, while it is true that the trial court relied in part upon the defendant's statements in its rejection of an insanity defense, there was other evidence to indicate that the defendant was not insane. First, there is the testimony of the People's psychiatrist who, on the basis of two interviews with the defendant as well as an examination of his file, concluded that the defendant did not lack substantial capacity to know that he was starting a fire, that such fire could burn down the building and injure any occupants therein, and that such conduct was wrong. Moreover, as noted by the trial court:

"Turning to the defendant's psychiatric defense, it is significant to note that the critical assertions that the defendant had experienced hallucinations and delusions when he committed the crimes, were not made on [the date of the occurrence] to his friend [whom the defendant phoned after fleeing the house] or to [the] [d]etective, or to the doctors at Elmhurst or Holliswood Hospital who were treating him. Rather, these assertions were made to the psychiatrists more than one year and a half after the fire as he was preparing his insanity defense for his trial.

"Finally, [the defendant's] repeated assertions of severe depressions, suicidal intentions or psychiatric history prior to the fire * * * cannot be independently documented or confirmed".

In light of the above, we find that, even without resort to the statements which he made subsequent to requesting counsel, the defendant failed to prove by a preponderance of the evidence that he lacked criminal responsibility for his acts by reason of mental disease or defect (Penal Law § 40.15; see generally, People v Yong Ho Han, 200 AD2d 780).

Accordingly, the judgment of conviction is affirmed. Santucci, J. P., Altman and Friedmann, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, on the law and the facts, to grant that branch of the defendant's omnibus motion which was to suppress his written statement and his ensuing statements to the police, and to order a new trial, with the following memorandum: After his arrest for arson resulting in the death of his wife and son, the defendant made a brief oral statement to a detective and asked to speak to a lawyer, whereupon all questioning ceased. After about five minutes, while the detective was processing the paperwork on the case, the defendant called out "I'll tell you what you want to hear. I don't want to talk to my lawyer anymore". The detective let the defendant out of his cell, and took him to the squad interview room, where the defendant dictated a written statement to the detective. The defendant spoke for about one half hour. After the defendant finished dictating a two-page statement, the defendant signed the statement under the legend "The Above Statement is True", and the detective cosigned and dated it. When he returned to his cell, he said he was glad to get it off his chest. He also asked to see a photograph of his dead son. The detective complied, and the defendant responded that he was "doomed to hell".

Once a defendant in custody requests the aid of a lawyer, he or she cannot waive the right to the assistance of counsel and make a statement to the police in the absence of counsel *(see, People v Davis,* 75 NY2d 517, 523). Spontaneous statements made in the absence of counsel are admissible in evidence, but "the spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" *(People v Maerling,* 46 NY2d 289, 302-303). The instant statement, dictated by the defendant to a detective in the squad interview room, and signed by both the defendant and the detective, cannot be characterized as "spontaneous" *(see, People v Rivers,* 56 NY2d 476; *People v Lucas,* 53 NY2d 678). Although the defendant did not contend at the hearing that his written statement should be suppressed based upon a violation of his right to counsel, it is well settled that such an issue may be raised for the first time on appeal, if the record is sufficient to consider it *(see, People v Samuels,* 49 NY2d 218, 221; *People v Donovon,* 107 AD2d 433). Based upon the record, it is apparent that the defendant's written statement must be suppressed. The defendant's statement that he was glad he got it off his chest was a direct fruit of that statement *(see, People v Bethea,* 67 NY2d 364), and his statement that he was "doomed to hell" is a fruit of the detective's conduct in showing him his dead son's picture *(see, People v*

*Ferro,* 63 NY2d 316, *cert denied* 472 US 1007; *People v Lucas, supra; People v Nichols,* 163 AD2d 904).

In this case, it was undisputed that the defendant committed the arson which resulted in the death of his wife and son. The sole factual issue before the court was whether the affirmative defense of insanity was sustained.

The trial court, in a written decision specifying the basis for its verdict, relied heavily on the written statement, designated People's Exhibit 2, and the defendant's subsequent statements. The trial court specified the details of the "sum and substance of his statement (People's Exhibit #2)" and held:

"Initially, the statement the defendant gave to Detective Garner is most insightful to demonstrate Gregory Harvey's frame of mind on [the day of the crime] and to demonstrate whether he knew or could appreciate the nature and consequences of his actions. This statement, given approximately twenty hours after the fire and given in a very responsive and coherent manner, contains the thought processes of the defendant at the time of the fire * * *

"Moreover, this statement's relevance is paramount inasmuch as it demonstrates, from the lips of Gregory Harvey himself, that he not only knew the seriousness and consequences of his actions but also that he knew that his actions were wrong. When Gregory Harvey was shown a picture of his son Julian, he laments, 'What did I do, I know that I'm doomed to hell' and then, that he 'was glad that he got that off his chest' * * * His relief in confessing what he had done and in unburdening himself from the weight of his actions belies his inability to distinguish right from wrong".

Although there was other evidence to rebut the defendant's claim of insanity, the illegally-obtained statements, taken only 20 hours after the crime, as noted by the court, constituted the best evidence of the defendant's thought processes at the time of the crime. Indeed, as the majority notes, the trial court found the fact that the defendant did *not* assert that he experienced hallucinations and delusions to the detective who interviewed him to be particularly significant.

Accordingly, the admission of those statements cannot be deemed harmless error *(see, Matter of Quinton A.,* 49 NY2d 328, 338).