OPINION OF THE COURT
Chief Judge Cooke.
At issue on this appeal is whether certain statements made by defendant during a telephone call with his father should be suppressed — because they were obtained by a *615 police officer after defendant had been assigned counsel. In the circumstances of this case, it must be concluded that admission of the statements violated defendant’s State constitutional rights.
Early on the morning of December 14, 1979, defendant was arrested and charged with second degree murder. He was arraigned and assigned counsel on the same day. Counsel from the Public Defender’s office visited Grimaldi at 9:00 a.m. the next morning in the Greene County Jail.
A few hours later, Investigator Reidy of the State Police, accompanied by another officer,, went to the Greene County Jail to interview defendant. Defendant was then brought to the jail library. Although Reidy himself testified that he knew defendant was represented by counsel, he nonetheless proceeded with the questioning.* Defendant refused to make any statements to the officers until he had an opportunity to talk with his father. Despite Reidy’s exhortations to defendant to make a statement, defendant insisted upon speaking to his father. Finally, Reidy said to defendant “if you want to talk to your father and explain anything to him then you talk to him, and that I would get back and talk to you [defendant]”.
Officer Reidy then arranged for defendant to be returned to his cell and for a phone to be provided. When the jail guard arrived with the phone, Reidy stood about 15 or 20 feet away from defendant’s cell, outside defendant’s view. The officer had not accompanied defendant back to his cell nor did he inform defendant that he would be within a short distance of the cell during the call. Thus, as far as defendant knew, no officer was present on the cell block during his phone conversation.
Officer Reidy overheard defendant make certain statements on the phone and recorded them in his notebook. Defendant’s motion to suppress the statements was denied and they were admitted at trial. A jury returned a verdict of guilty to the charge of second degree murder.
Throughout the proceedings, defendant has maintained *616 that the statements were obtained in violation of his State constitutional right to counsel. The Appellate Division, only briefly discussing the issue, concluded that because the police questioning had not directly elicited incriminating remarks, the statements were admissible. Reversal is mandated.
It is now firmly established by a long line of cases that a waiver of rights may be obtained from a criminal defendant who is actually and known to be represented by an attorney only in the presence of counsel (e.g., People v Settles, 46 NY2d 154, 162; People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325, 329; 51 St John’s L Rev 216). Any statement obtained in disregard of this rule violates the State Constitution and must be suppressed (e.g., People v Settles, supra, at p 162; People v Hobson, supra). This “indelible” right to counsel also attaches upon defendant’s request for an attorney, at arraignment or upon the filing of an accusatory instrument (People v Cunningham, 49 NY2d 203; People v Samuels, 49 NY2d 218, 222-223; People v Settles, supra, at pp 165-166). Underlying the rule is the concept that a criminal defendant confronted by the awesome prosecutorial machinery of the State is entitled, at a bare minimum, to the advice of counsel when he is considering surrender of his valuable legal rights (People v Cunningham, 49 NY2d 203, 207-208, supra). Indeed, to deny a defendant the guidance of counsel at such a time could be tantamount to and sometimes even more harmful than denial of an attorney at the trial itself (see, e.g., People v Hobson, 39 NY2d 479, 484-485, supra; People v Lopez, 28 NY2d 23, 29 [dissenting opn], overruled People v Settles, supra).
In this case, defendant at the time of the questioning had been assigned counsel and had been arraigned. His indelible right to counsel had therefore undoubtedly attached and no waiver could be validly obtained. Aware of these facts, the officers nonetheless undertook to converse with defendant regarding the criminal charges in the absence of his attorney. Statements made by defendant in the course of the discussion would, of course, be inadmissible.
*617 The People contend, however, that the statements here were volunteered by defendant at a time when no questioning was going on and were not a product of an interrogation. They conclude that the statements were thus spontaneous and admissible. This argument represents an inaccurate view of the spontaneity doctrine.
It is true that previous cases have articulated a narrow exception to the rule that statements made by a defendant who possesses an indelible right to counsel must be suppressed. Admission of a truly spontaneous statement, blurted out by defendant without any “inducement, provocation, encouragement or acquiescence [by the authorities], no matter how subtly employed” has been said to be proper, even if the statement was made in the absence of counsel (e.g., People v Maerling, 46 NY2d 289). That a statement was volunteered or not made in direct response to questioning, however, does not render it spontaneous (e.g., People v Lucas, 53 NY2d 678, 680; People v Rogers, 48 NY2d 167, 174). Rather, it must satisfy the test for a blurted out admission, a statement which is in effect forced upon the officer (People v Maerling, supra, at p 303).
In the present circumstances, the statements overheard by the officer were indeed the result of the illegal questioning. It was only because of the police conduct that defendant found it necessary to communicate with his father. And, the officer even suggested at one point that defendant converse with his father and then make a statement. Had defendant followed this suggestion, the resulting statement would have been inadmissible. That the officer was able to overhear the statement before defendant returned for further questioning should not alter the result. In short, since the need to make the telephone call was created by and was in effect an extension of the illegal questioning, and since the police ultimately arranged, acquiesced in and took affirmative advantage of the phone call, the statements must be deemed inadmissible (cf. People v Rogers, supra, at p 174). Given this conclusion, it is unnecessary to address the issue whether admission of the overheard conversation violated the Fourth Amendment.
*618 One other contention by defendant merits brief comment. Defendant argues that certain items of physical evidence should be suppressed as they resulted from an arrest that was not based upon probable cause. Although the question is an extremely close one, and could well have been decided the other way as a factual matter, absent an error of law an affirmed finding of probable cause is generally not reviewable by this court (e.g., People v McRay, 51 NY2d 594, 601). It cannot be said here as a matter of law that the record is without support for the inference of probable cause drawn by the suppression court and affirmed by the Appellate Division.
Accordingly, the order of the Appellate Division should be reversed, the motion to suppress the statements granted, and a new trial ordered.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchs-berg and Meyer concur.
Order reversed, etc.

 Reidy testified at one point that defendant did not want the lawyer assigned to represent him. The People do not now claim, nor could they, that this constituted a waiver of the right to counsel (e.g., People v Hobson, 39 NY2d 479).