Quentin MEADOWS, Petitioner,

v.

Robert H. KUHLMANN, Superintendent, Sullivan Correctional Facility, Fallsbury, New York; Robert Abrams, Attorney General of New York; and Denis Dillon, District Attorney of Nassau County, Respondents.

No. 85 CV 4515.

United States District Court, E.D. New York.

Sept. 19, 1986.

Spiros A. Tsimbinos, Kew Gardens, N.Y., for petitioner.

Denis Dillon, Dist. Atty., Mineola, N.Y. by Bruce E. Whitney, Denise Parillo, Asst. Dist. Attys., for respondents.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner, Quentin Meadows, was convicted after a jury trial in New York State Supreme Court, Nassau County, of two counts of Robbery in the First Degree. On March 5, 1982, petitioner was sentenced as a second violent felony offender to two indeterminate terms of ten to twenty years imprisonment to be served concurrently with one another and consecutively to any other sentence previously imposed. His conviction was affirmed without an opinion by the Appellate Division, Second Department, on June 4, 1984. The New York Court of Appeals affirmed in an opinion reported at 64 N.Y.2d 956. The United States Supreme Court denied a petition for certiorari on October 10, 1985. Petitioner is before this Court on an application for a writ of habeas corpus.

In this application two grounds are raised by the petitioner in seeking the writ:

(1) A lineup viewing by a key witness was conducted in the absence of counsel several months after counsel had appeared in the matter.

(2) The petitioner was improperly impeached by the use of an alleged admission taken in violation of his right to counsel.

## I. *Factual Background*

During the evening of October 21, 1980, John Taylor was working as an attendant at a BP gas station located in Nassau County. Also working at the station was Paul Cufalo. Taylor's cousin, James Alviti, came to the station by bicycle, for a visit, around 9:15 p.m. Petitioner arrived at the station soon after and displayed the butt of a gun to Taylor and Alviti. He ordered them into a back room where Cufalo was already present and made the three men crouch on the floor. Petitioner took cash from Taylor and Alviti and then left. A short time later Taylor called the police and described the robbery. When the police responded, Taylor, Alviti and Cufalo gave descriptions of the petitioner.

The next day, Taylor and Alviti went to police headquarters to view slides and photographs in an attempt to identify the robber. They immediately recognized petition-

er on one of the sixteen slides and on one picture.

A week later, on October 29, 1980, Taylor was again at work at the BP station. Vincent Rizzuto was also on duty at the station. At about 9:15 that evening, while servicing a car, Taylor recognized petitioner walking into the station's office. Taylor asked a customer to call for help and followed petitioner into the office. Petitioner addressed Taylor by his first name and, at gunpoint, ordered Taylor and Rizzuto into a back room. Petitioner took cash from Taylor and Rizzuto and left. Taylor called the police. He told them that he had been robbed again by the same person who had robbed him the week before. Detective Byron C. Bartlett arrived at the scene. He showed Taylor and Rizzuto the same photographic array that had been used the week before. Both men identified petitioner's picture.

A felony complaint was filed and an arrest warrant for petitioner was obtained on November 7, 1980 from Judge Myron Steinberg. On November 20, 1980, detectives of the Nassau County Police Department apprehended petitioner at his home in Hollis, Queens. Petitioner was read his *Miranda* warnings and taken to the Robbery Squad Room of the Nassau County Police Department. While in custody, that day, petitioner made an oral statement to Detective Thomas P. Howell in which he admitted committing the two gas station robberies.

An indictment against petitioner was filed on January 26, 1981. At his arraignment on March 25, 1981, petitioner was represented by James Horan, Esq., who filed an appearance as retained counsel. Mr. Horan requested and was given a two-month adjournment to prepare for trial and make motions. During those two months, the trial court unsuccessfully attempted to communicate orally with Mr. Horan on numerous occasions to notify him to attend a conference on petitioner's case. Minutes of Hearing at 456.

A motion was filed by the State requesting a pretrial lineup. The motion was never answered and Mr. Horan made no ap-

pearance with respect to it. Judge Harrington granted the motion and sent Mr. Horan a copy of the order. Minutes of Hearing at 456. On the date of the lineup, May 19, 1981, Detective Byron C. Bartlett telephoned Mr. Horan's office several times but was not able to speak to him directly. Minutes of Hearing at 333–35. The lineup was held in the absence of Mr. Horan and petitioner was identified by Vincent Rizzuto. None of the other victims viewed the May 19th lineup.

At petitioner's trial Taylor, Rizzuto and Alviti made in-court identifications. Rizzuto also testified about his identification of petitioner at the May 19th lineup. By a prior ruling the prosecution had been barred from using petitioner's admission in its case-in-chief because it was obtained from the petitioner in violation of his right to counsel as set forth in *People v. Samuels*, 49 N.Y.2d 218, 424 N.Y.S.2d 892, 400 N.E.2d 1344 (1980). However, the prosecutor was permitted to use the statement for impeachment purposes if petitioner took the stand. Petitioner did testify and the prosecution introduced his prior statement through the rebuttal testimony of Detective Howell. Subsequently, the jury returned a verdict of guilty.

## II. *The Lineup Challenge*

Petitioner argues that the May 19th lineup conducted without counsel violated his Sixth Amendment rights. He questions the admissibility of the lineup and the in-court identifications by Rizzuto and claims that such error is not harmless. He further argues that it would be improper to presume that petitioner waived his right to counsel by his attorney's failure to appear. Petitioner argues that he should not "be punished for what his attorney or any attorney neglected to do." Petitioner's Memorandum of Law in Support of Petition for Writ at 6 (hereinafter "Petitioner's Memorandum").

In *Gilbert v. State of California*, 388 U.S. 263, 273–74, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967), the Supreme Court established a *per se* rule which excludes

the admission of pretrial, post-indictment lineups conducted without counsel. At first glance it would appear that this rule should have been applied to Rizzuto's lineup identification and he should have been precluded from testifying about it. However, in *Gilbert* the lineup in question was conducted *without notice* to the defendant's counsel, a situation the opposite of what transpired in petitioner's case. It would seem, therefore, that the strict rule of *Gilbert* does not apply to this case. Petitioner himself suggests that "this Court has the unique opportunity to determine the important issue of whether a defendant can be denied his constitutional right of counsel by the failure of counsel to appear at a lineup after having been notified and requested to do so." Petitioner's Memorandum at 7.

The State court judge, Raymond Harrington, who presided over petitioner's pretrial hearing, strongly resolved this issue against petitioner:

> [I]t is worthy of observation that Mr. Horan [petitioner's original counsel] has not appeared during the course of this hearing to offer any testimony indicating that he did not have any notice of the proposed lineup or sought any adjournment of the same.... Counsel cannot ignore his obligation to the defendant and thereby frustrate every effort to have this matter proceed in an orderly fashion. To find otherwise would give counsel license to merely ignore motions, directives of this Court and have it all inure to the benefit of his client. That obviously cannot be sanctioned and it is not sanctioned.

Minutes of Hearing at 456–57.

■ Judge Harrington's remarks make a good deal of sense. To rule in petitioner's favor on the facts of this case would greatly impair the administration of justice and in the long run cause harm to other defendants. The Supreme Court's rulings in *Gilbert* and other cases involving identification issues, such as *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), were meant to encourage counseled

lineups in order to insure proper identifications. If this Court were to allow the exclusion of lineups based on the recalcitrance of counsel, law enforcement authorities might be forced to use other, more suggestive procedures, resulting in more miscarriages of justice.

■ Even assuming, *arguendo*, that it was improper to admit Rizzuto's testimony regarding the pretrial lineup, any error that occurred was clearly harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To begin, Rizzuto's in-court identification of petitioner is admissible despite the uncounseled lineup so long as it has an independent origin not tainted by the impermissible lineup identification. *United States v. Wade*, 388 U.S. at 239–41, 87 S.Ct. at 1938–40. Rizzuto had substantial opportunity to view petitioner, gave the police an accurate description of the petitioner and identified him from a photo array immediately after the crime. There can be no doubt that Rizzuto had an independent basis for making an in-court identification of petitioner.

Petitioner has not challenged the lineup procedure itself but only argues that the lack of counsel taints it. There is no suggestion by petitioner that either the lineup or in-court identification was the result of suggestiveness which created a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). The Court is convinced that under all the circumstances, Rizzuto's in-court identification was sufficiently reliable and therefore not excludable. *See Manson v. Brathwaite*, 432 U.S. 98, 106–07, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977).

Rizzuto's in-court identification, when coupled with the eyewitness identifications of Alviti and Taylor, is especially reliable and presents an overwhelming amount of evidence. Whatever harm occurred by admitting testimony of Rizzuto's pretrial identification was small. The Court has no doubt that the jury's decision would have been the same.

### III. *Admission of Petitioner's Statement*

At petitioner's pretrial hearing the prosecutor conceded that, although there was no evidence of coercion, petitioner's statement to Detective Howell could not be used in the People's case-in-chief because it was taken after the defendant was arrested pursuant to a warrant. Minutes of Hearing at 243. The New York Court of Appeals held in *People v. Samuels,* 49 N.Y.2d 218, 424 N.Y.S.2d 892, 400 N.E.2d 1344 (1980), that a criminal action in New York commences with the filing of an accusatory instrument which includes the felony complaint that precedes an arrest warrant. At this point a defendant's right to counsel attaches and New York Courts have held that a defendant may not waive his right to counsel outside the presence of counsel. *See, e.g., People v. Grimaldi,* 52 N.Y.2d 611, 616, 439 N.Y.S.2d 833, 422 N.E.2d 493 (1981). However, the prosecution was, under the authority of *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), permitted to use the statement to impeach the petitioner after he testified.

Petitioner argues that the admission of the statement for purposes of impeachment was improper under the holding of the Second Circuit in *United States v. Brown,* 699 F.2d 585 (2d Cir.1983). In *Brown* the Court held that a statement taken in violation of a defendant's Sixth Amendment right to counsel could not be used for impeachment purposes even if the strictures of *Miranda* had been complied with.

Respondents argue that *Brown* does not apply to this case. The contention is made that the New York Court of Appeals in *Samuels, supra,* created a right to counsel that is unique to New York, based on local statutes. Respondents claim that the federal right to counsel was not violated. They posit that petitioner's statements were not admissible in the prosecution's case-in-chief because "they were obtained in violation of the more restrictive New York State Right [sic] to counsel which had attached simply because a felony complaint had already been filed." Respondents' Memorandum of Law at 12.

*Brown* is, of course, only concerned with a violation of a defendant's right to counsel under the Sixth Amendment of the United States Constitution. Although *Brown* involved a federal prosecution, it does not by its terms limit itself to those cases but would also apply to State defendants whose Sixth Amendment rights have been violated by the improper admission of statements for impeachment purposes. However, the Court in *Brown* did limit its holding to those "statement[s] taken from an *indicted* defendant in violation of his Sixth Amendment rights. It does not extend to statements taken under other circumstances, such as when the statement is obtained *before* indictment and prior to the attachment of a constitutional right to counsel." *Brown,* 699 F.2d at 590 (emphasis in original).

In determining whether a State defendant has been subjected to an improperly admitted statement under *Brown,* a court must first determine: when the right to counsel attached; whether the statement was obtained after the right attached; and whether there had been a valid waiver of that right. For purposes of the Sixth Amendment the right to counsel attaches with the initiation of judicial proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)).

A federal court must look to State law to determine whether adversary proceedings have begun. Although the respondents are correct in that a State may create a more expansive right to counsel than that required by the United States Constitution, it is the unique qualities of State proceedings that will determine whether the right to counsel has attached in a Sixth Amendment sense. Thus, in *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the Supreme Court held that in Alabama an arraignment was a critical proceeding requir-

ing counsel because under Alabama law certain motions not made at that time are waived.

In the present case, at the time the statements were taken from petitioner a felony complaint had been filed and an arrest warrant had been issued by a State judge. The authority of the Second Circuit as to whether this is sufficient to constitute the initiation of adversary proceedings for purposes of the Sixth Amendment is not entirely clear. In *United States ex rel. Robinson v. Zelker*, 468 F.2d 159 (2d Cir.1972), *cert. denied*, 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (1973), the Court interpreted Section 144 of the New York Code of Criminal Procedure, which has since been repealed and replaced by a similar statute. The *Robinson* Court held that the filing of a complaint and the issuance of an arrest warrant by a State court judge was the beginning of adversary proceedings within the meaning of *Kirby v. Illinois, supra,* and the defendant had a right to counsel. *Robinson,* 468 F.2d at 163.

The holding of *Robinson* was thrown into doubt by the decision of the Second Circuit in *United States v. Duvall*, 537 F.2d 15 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). The *Duvall* Court held that the filing of a complaint and the issuance of an arrest warrant by a United States Magistrate was not the beginning of adversary proceedings and no Sixth Amendment right to counsel attached at that point. The Court noted:

> [T]o hold that the accrual of the right to counsel is accelerated by use of the warrant procedure would tend to discourage this whereas the policy should be to encourage it.

*Duvall,* 537 F.2d at 22.

The Second Circuit discussed this problem again in *O'Hagan v. Soto*, 725 F.2d 878 (2d Cir.1984). In *Soto* the Court noted that Section 144 of the New York Code of Criminal Procedure in *Robinson* had been replaced by § 100.05 of the New York Criminal Procedure Law, which provides that a criminal action is commenced when an accusatory instrument is filed in a criminal court. The *Soto* Court mentioned that: "Arguably the charging document underlying the warrant on which [the plaintiff] was arrested sufficed to trigger Sixth Amendment protection, but the matter is clouded by our decision in *United States v. Duvall.*" *Soto,* 725 F.2d at 879. The Court then expressly refused to resolve the conflict between *Robinson* and *Duvall.*

■ Faced with this ambiguity as to applicable precedent, the Court is of the opinion that *Duvall* is controlling in this matter. To hold that the right to counsel attached upon the issuance of an arrest warrant would, as the *Duvall* Court noted, result in the undesirable result of a disincentive to utilize arrest warrants. The application of the right to counsel at early stages of the prosecution was in part a reaction to overzealous police activity. *See, e.g., Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (use of radio transmitter by federal agents to obtain admissions of defendant after indictment). It would seem incongruous to discourage police from obtaining arrest warrants in the name of the Sixth Amendment.[1]

■ In the present case the Court holds that the Sixth Amendment right to counsel did not attach to the petitioner at the time he made the incriminating statements because adversary judicial proceedings had not begun. There being no right to counsel, the holding of *Brown* does not apply to this case and thus the statements were properly admitted for impeachment purposes. Of course, having held that petitioner's right to counsel had not attached, the Court need not reach the issue of whether petitioner made a valid waiver of his right to counsel.

---

1. Stranger results, of course, have been obtained over the years but it does not seem to us to be necessary to add another one in this case.

## IV. *Conclusion*

Having found both of petitioner's grounds for a writ of habeas corpus to be without merit, the petition must be and hereby is dismissed.

SO ORDERED.