THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
STUART R. MOSS, Appellant.

Fourth Department, April 24, 1992

APPEARANCES OF COUNSEL

*Joseph Fahey* for appellant.

*Gary Miles, District Attorney (Cindy Intschert* of counsel), for respondent.

## OPINION OF THE COURT

GREEN, J.

We are presented with the question whether defendant met his burden of establishing, by a preponderance of the evidence, that he lacked criminal responsibility by reason of mental disease or defect *(see,* Penal Law § 40.15; *People v Kohl,* 72 NY2d 191). On the basis of all of the evidence at trial, the jury could have reasonably concluded that defendant failed to sustain his burden. The question of sanity is for the trier of fact *(see, People v Wood,* 12 NY2d 69, 77; *People v Enchautegui,* 156 AD2d 461, *lv denied* 76 NY2d 787), and " 'if the record in its entirety presents a fair conflict in the evidence, or if conflicting inferences can properly be drawn from it, "* * * the determination of the jury will not be interfered with, unless it is clearly against the weight of evidence" ' " *(People v Wood, supra,* at 77, quoting *People v Horton,* 308 NY 1, 12, quoting *People v Taylor,* 138 NY 398, 405).

The jury "has the right to accept or reject, in whole or in part, the opinion of any expert" *(People v Justice,* 173 AD2d 144, 146; *see also, People v Wood, supra,* at 77; *People v*

*Enchautegui,* 156 AD2d 461, *supra).* The record in this case supports the jury's rejection of the defense psychiatrists' opinions that defendant lacked criminal responsibility with respect to the crimes charged. Although the four experts agreed that defendant was mentally ill, mental illness and legal insanity are distinct concepts *(see, People v Wood, supra,* at 77; *People v Gonzalez,* 100 AD2d 913). The People's expert, Dr. Lesswing, was unable to offer an opinion on defendant's capacity to know or appreciate the nature, consequences or wrongfulness of his conduct. Dr. Seidenberg, defendant's principal expert, testified on cross-examination that on the evening in question, defendant had some capacity to understand the nature and consequences of his conduct and further, that defendant probably would have admitted at that time that killing is wrong. Thus, the jury could have reasonably concluded that defendant suffered from a mental disease or defect, but that he was nevertheless criminally responsible *(see, People v Markowitz,* 133 AD2d 379, *lv denied* 70 NY2d 934; *People v Gonzalez,* 100 AD2d 913, *supra).*

In rejecting the affirmative defense, the jury was also entitled to rely on the presumption of sanity *(see, People v Kohl,* 72 NY2d 191, 199, *supra; People v Silver,* 33 NY2d 475, 483) and on the evidence of defendant's rational and deliberate conduct throughout the evening of the shootings. Defendant's calculated efforts to avoid detection and to escape the police support the conclusion, implicit in the jury's verdict, that defendant possessed substantial capacity to know and appreciate the nature, consequences and wrongfulness of his conduct.

▮ Defendant is entitled to a new trial, however, because the court erred in denying the motion to suppress the telephone conversation between defendant and his brother, which was surreptitiously overheard by a police officer while defendant was being treated in the hospital emergency room. The conversation was used to show that defendant was rational at the time of the shootings. Investigator Wayne Corsa was allowed to testify that he overheard defendant explain to his brother that he "nailed" Pietrowski, the first shooting victim, for making sexual advances, that he shot a "cop" in self-defense, that he had "more bullet holes in me than Carter's got liver pills", and that he was scared.

The call took place when defendant was in custody at the hospital, experiencing intense pain from gunshot wounds. Investigator Corsa had interrogated defendant for 45 minutes without advising defendant of his *Miranda* rights or identify-

ing himself as a police officer. During this period, Corsa was dressed in hospital garb. Corsa repeatedly asked what defendant wanted him to tell Morgan, defendant's brother, and defendant believed that the sole purpose of his conversation with Corsa was to relate information to his brother. Defendant, who was severely injured, exhausted and under sedation, also believed that Corsa was an attorney and requested Corsa to keep their conversation confidential. After Corsa finally identified himself as a police officer and advised defendant of his rights, defendant invoked his right to counsel. The telephone call between defendant and his brother, which Corsa had helped to arrange, took place immediately thereafter. During the conversation, Corsa stood 10 feet away from defendant, hidden behind a hospital curtain.

The statements overheard by Corsa are clearly the product of illegal police conduct. The record does not support the suppression court's findings that defendant's statements were spontaneous and that they were "inadvertently overheard" by Corsa. To be admissible as truly spontaneous statements, "the spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" (*People v Maerling,* 46 NY2d 289, 302-303; *see also, People v Grimaldi,* 52 NY2d 611, 617). Under this standard, defendant's statements cannot be characterized as spontaneous. The record of the suppression hearing established that, after defendant invoked his right to counsel, Corsa "endeavored, by subtle maneuvering" to overhear defendant's conversation (*see, People v Harris,* 57 NY2d 335, 342, *cert denied* 460 US 1047). As in *People v Grimaldi* (52 NY2d 611, *supra),* the telephone call "was in effect an extension of the illegal questioning, and since the police ultimately arranged, acquiesced in and took affirmative advantage of the phone call, the statements must be deemed inadmissible" (*People v Grimaldi, supra,* at 617).

The failure to suppress defendant's statements to his brother was not harmless error. The People rely heavily on that conversation on appeal, as they did at trial, to support their position that defendant never lost his ability to distinguish right and wrong or to appreciate the nature and consequences of his actions. In a case presenting a close question on the issue of defendant's criminal responsibility, the error in admitting this highly damaging evidence was not harmless (*see, People v Crimmins,* 36 NY2d 230). Accordingly, the conviction should be reversed and a new trial granted on

count two of the indictment. The indictment should otherwise be dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury.

FALLON, J. (dissenting in part). We agree that the judgment of conviction must be reversed, but we do not concur with the rationale enunciated by the majority or their recommendation for a new trial. There is no dispute that defendant bore the burden of establishing, by a preponderance of the evidence, that he lacked criminal responsibility by reason of mental disease or defect *(see,* Penal Law § 40.15; *People v Kohl,* 72 NY2d 191). The record reveals, however, that defendant met that burden.

On September 11, 1987, defendant went on an unprovoked shooting rampage which resulted in the death of the Village of Dexter Police Chief, the death of a friend and the attempted killing of a State Trooper. At trial, defendant argued that he was not responsible for his conduct by reason of mental disease or defect (Penal Law § 40.15). Defendant called three psychiatrists to testify on his behalf. Two of them testified that defendant was suffering from a chronic mental illness, schizophrenia, paranoid type, and thus lacked the capacity to know or appreciate the nature and consequences of his conduct. Their diagnosis was confirmed by another psychiatrist who treated defendant at the Rochester Psychiatric Center following a determination of incompetency rendered at the close of the People's case in a prior trial. The psychiatric testimony was corroborated by a number of lay witnesses who testified that defendant had demonstrated increasingly bizarre behavior for a considerable period of time prior to September of 1987, dating as far back as 1981. In rebuttal, the People produced a psychologist who confirmed defendant's psychiatric diagnosis but was otherwise unable to offer an opinion whether defendant was criminally responsible for his conduct. The jury rejected defendant's insanity defense and convicted him of manslaughter and attempted murder.

Where the record presents conflicting expert testimony on the question of the defendant's mental state at the time the crime was committed, there is no basis to disturb the jury's verdict *(see, People v Kennedy,* 162 AD2d 987, 988, *lv denied* 76 NY2d 894). Similarly, in those cases where the record offers a valid basis for the rejection of the psychiatric opinions, the presumption of sanity is sufficient to satisfy the People's burden *(see, People v Schiavi,* 99 AD2d 665, 666, *affd* 64 NY2d

704). Neither situation, however, is present in this case. On the contrary, the psychiatric proof of defendant's insanity on the date in question was uncontradicted and, at oral argument of this appeal, the People conceded that they were not able to submit any proof to rebut defendant's psychiatrists' opinions. Here, the nature and quality of the proof offered by defendant on that issue was sufficient to establish the affirmative defense of mental disease or defect by a preponderance of credible evidence. In the presence of such proof, the presumption cannot serve to satisfy the People's burden (see, People v Rivera, 78 AD2d 1002).

We conclude that the verdict is against the weight of the evidence. In our view, defendant was laboring under a mental disease on September 11, 1987, that prevented him from knowing the nature and consequences of his conduct or that it was wrong (see, People v Barnes, 98 AD2d 977; People v Rivera, supra). Thus, County Court erred in denying defendant's posttrial motion to set aside the verdict.

Accordingly, we would reverse the judgment of conviction, remit the matter to County Court with a direction to enter a directed verdict of not responsible by reason of mental disease or defect (CPL 470.45; People v Barnes, supra; People v Rivera, supra) and issue an examination order pursuant to CPL 330.20 (2).

BALIO and LAWTON, JJ., concur with GREEN, J.; FALLON, J., dissents in part in a separate opinion in which CALLAHAN, J. P., concurs.

Judgment reversed, on the law, motion granted and new trial granted on count two of the indictment; indictment otherwise dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury.