■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFRAIM SHURKA, Appellant. [596 NYS2d 428] —Appeal by the

defendant from a judgment of the Supreme Court, Kings County (Brill, J.), rendered May 2, 1990, convicting him of offering a false instrument for filing in the first degree (four counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement authorities.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

The evidence adduced at the trial established that the defendant and his codefendant Henry Sapir (see, People v Sapir, 191 AD2d 724 [decided herewith]) were the principals in a corporation known as Gol Gas, Inc. (hereinafter Gol Gas) which sold, inter alia, diesel fuel for trucks. The fuel station was owned by Blue Ridge Farms, Inc. (hereinafter Blue Ridge Farms), and was leased to Gol Gas under an arrangement that provided for discounted sales of fuel to Blue Ridge Farms' trucks, as well as sales to others unrelated to Blue Ridge Farms. The prosecution of the two defendants stemmed from their alleged under-reporting of fuel sales and the concomitant underpayment of sales and excise taxes.

Contrary to the defendant's contentions, we find that the evidence was legally sufficient to establish his guilt of offering a false instrument for filing in the first degree (Penal Law § 175.35). The evidence adduced at the trial established that the defendant significantly under-reported the amount of diesel fuel Gol Gas sold to Blue Ridge Farms and other corporate consumers during the period alleged in the indictment, and that the taxes remitted to the State were thus proportionately underpaid. There is no merit to the defendant's claim that sales to Blue Ridge Farms were not taxable events. Under no reasonable view of the evidence or any reasonable interpretation of the tax law, was Blue Ridge Farms a bulk user whose withdrawal of fuel from its own tanks was the taxable event (see, 20 NYCRR 420.3 [b]). The evidence established that Blue Ridge Farms paid Gol Gas for the fuel it purchased from Gol Gas, which in turn purchased fuel from fuel suppliers. The prosecution established that the sales by Gol Gas to Blue Ridge Farms were retail sales subject to tax (see, 20 NYCRR 420.3; Tax Law § 282-a). The filing of fraudulent tax documents under-reporting quantities of fuel sold for the purpose of under-reporting taxes owed constituted offering a false

instrument for filing *(see, People v Diaz,* 111 AD2d 765; *People v Walsh,* 108 AD2d 464, *affd* 67 NY2d 747). Moreover, upon the exercise of our factual review power *(see,* CPL 470.15 [5]), we are satisfied that the jury's verdict was not against the weight of the evidence.

The defendant's remaining contentions, including his challenges to the fairness of the trial, and the sentence imposed, are without merit. Contrary to the conclusions of our dissenting colleague, the court correctly denied suppression of the statements made between the defendant and his codefendant to one another in Hebrew that were overheard by a Hebrew-speaking police officer who had been placed in the room by the police to overhear the conversations of the defendant and his codefendant, if any. There is no dispute that the defendant had invoked his right to counsel prior to the time the inculpatory statements were overheard. However, that the prosecution did nothing to elicit these statements *(see, Kuhlmann v Wilson,* 477 US 436; *People v Gonzales,* 75 NY2d 938, *cert denied* 498 US 833). The dissent states that the mere presence of a Hebrew-speaking police officer constitutes a subtle maneuver that renders the statements other than spontaneous. However, the mere presence of an officer who, unbeknownst to the defendant, understood his nonprivileged communications, is not equivalent of the police-orchestrated telephone call overheard in *People v Grimaldi* (52 NY2d 611). Indeed, in that case the Court of Appeals criticized the police for *creating the need* for the telephone call that they planned to overhear, and found that this was an illegal extension of questioning *(see, People v Grimaldi, supra;* at 617; *accord, People v Moss,* 179 AD2d 271). Unlike the situations in *Grimaldi* and *Moss,* the statements made by the defendant here, which do not implicate the attorney-client privilege *(cf., People v Cooper,* 307 NY 253), were simply not the product of an interrogation, nor were they the result of express questioning or its functional equivalent *(see, People v Harris,* 57 NY2d 335, 342, *cert denied* 460 US 1047). The officer was placed in a position to hear anything the defendant and his codefendant might say to one another, but any statements they made resulted solely from their mistaken assumption that only they could understand one another. The record does not suggest that the Hebrew-speaking officer did anything to mislead them into believing that he could not understand them, and there was testimony that it was a standard practice to have an officer present who spoke the same foreign language as the parties turning themselves in. Absolutely nothing was done to induce the defen-

dant and his codefendant into conversing with one another, and that is exactly what they did, of their own free will *(see, People v Kaye,* 25 NY2d 139, 144). Moreover, it must be emphasized that no privilege attached to these statements. Under these circumstances, we find no basis to disturb the hearing court's suppression ruling. The defendant and his codefendant spoke freely and voluntarily to one another in voices loud enough to be overheard *(see, People v Harrell,* 87 AD2d 21, *affd* 59 NY2d 620). That their assumption that they could not be understood was flawed does not compel a finding that their statements must be suppressed. Balletta, J. P., Rosenblatt and Miller, JJ., concur.

O'Brien, J., dissents and votes to reverse the judgment, on the law, to grant the branch of the defendant's motion which was to suppress his statements to law enforcement authorities, and to order a new trial, with the following memorandum. I find that the statements made by the defendant to his codefendant in Hebrew were obtained from the defendant in violation of his right to counsel and were therefore inadmissible on the People's direct case. Since the admission of these statements was not harmless error, I would reverse the defendant's conviction and grant him a new trial.

The evidence adduced at the suppression hearing established that the defendant and his codefendant Henry Sapir voluntarily surrendered to the Office of the Attorney-General on a prearranged date following their indictment. They were immediately given *Miranda* warnings, and both refused to answer questions without an attorney being present. For the next two hours, the defendant and his codefendant remained in a squad room while their arrests were processed by Investigator Ernest Peck, who handled all the paperwork and asked them pedigree questions in English. Another police officer, Investigator Richard Friedman, was in the squad room during the entire period, but he merely sat in the rear of the room and did not participate in the processing of the arrest. Investigator Friedman testified at the hearing that he was placed in the room because the defendant and his codefendant spoke Hebrew, and he understood the language. His assignment was to write down everything the defendant and his codefendant said in Hebrew. According to Friedman, neither the defendant nor his codefendant asked him if he understood Hebrew. On five separate occasions, when Peck left the immediate area, the defendant and his codefendant conversed in Hebrew. Friedman later made notes of their conversations. In addition, while the defendant and his codefendant were in a courthouse

hallway awaiting arraignment and Investigator Peck was absent, Investigator Friedman overheard another conversation in Hebrew. Investigator Friedman, as instructed by his supervisor, informed the defendant and his codefendant after their arraignment that he understood Hebrew. The hearing court refused to suppress the statements in Hebrew which were overheard by Investigator Friedman.

During oral argument of this appeal, the People acknowledged that Investigator Friedman was placed in the squad room for the express purpose of overhearing conversations by the defendant and his codefendant which were spoken in Hebrew. The People contend that this did not violate their constitutional rights because the statements were spontaneous. I disagree.

The defendant was indicted before he surrendered to the Attorney-General. Therefore, his right to counsel had attached at the time the statements were overheard by Friedman. As stated in *People v Settles* (46 NY2d 154, 161-163), once an indictment is returned, the character of the police function shifts from investigatory to accusatory. The suspect is now the accused, and there ought to be no necessity for further police investigation. The indictment commences the formal judicial proceedings against the defendant, and "it is at that point at which the assistance of counsel is indispensable" *(People v Settles, supra,* at 163). Consequently, all postindictment interrogation in the absence of counsel is prohibited, and a criminal defendant under indictment and in custody may not waive his right to counsel unless he does so in the presence of counsel *(see also, People v Samuels,* 49 NY2d 218). Furthermore, the defendant here expressly refused to answer questions in the absence of counsel. A defendant who has invoked his right to counsel may not waive that right in the absence of counsel *(see, People v Cunningham,* 49 NY2d 203), and any statement obtained in violation of this rule must be suppressed *(see, People v Hobson,* 39 NY2d 479).

Although the defendant never waived his right to counsel in the presence of counsel, the People contend that his statements are nevertheless admissible because they fall within the exception for statements which are spontaneously volunteered *(see, People v Gonzales,* 75 NY2d 938, 939, *cert denied* 498 US 833; *People v Kaye,* 25 NY2d 139, 143-144). For this exception to apply, "the spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" *(People v Maerling,* 46 NY2d 289, 302-303; *see also, People v Gonzales, supra).* The

statement must, in effect, be forced upon the officer *(see, People v Maerling, supra,* at 303). While it is undisputed that Friedman made no overt attempt to elicit statements from the defendant, the issue is whether the police "endeavored, by subtle maneuvering or otherwise" to overhear conversations which were meant to be private *(see, People v Harris,* 57 NY2d 335, 342, *cert denied* 460 US 1047; *People v Sobolof,* 109 AD2d 903, 905).

By conversing in Hebrew with his codefendant, the defendant obviously intended his conversations to be private, even though a third party was present in the room. In *People v Cooper* (307 NY 253) the Court of Appeals indicated that a new trial would be required if the proof had established that a Yiddish-speaking police officer was planted in the courtroom in order to overhear and report on conversations in Yiddish between the defendants and their attorney. The court noted that such an intrusion on an attorney-client conference "is particularly offensive where defendants have sought to keep their conversations and communications secret and confidential by resort to a foreign language" *(People v Cooper, supra,* at 259). While the case at bar does not involve an attorney-client conference, it is nonetheless contrary to any sense of fair play to circumvent the defendant's right to counsel by attempting to overhear his conversations with a codefendant in a foreign language. Friedman concededly was placed in the room for the express purpose of overhearing such private conversations and did not warn the defendant that he understood Hebrew until after the arraignment. This case is therefore distinguishable from those cases where the police, through inadvertence, happen to overhear conversations in their presence *(see, e.g., People v Harris, supra* [a statement blurted out by the defendant to her attorney over the telephone at the scene of the crime was admissible since the police officer had not "endeavored, by subtle maneuvering or otherwise" to overhear the conversation but was backing out of the room when he inadvertently overheard it]; *see also, People v Murphy,* 163 AD2d 425; *People v Stewart,* 160 AD2d 966; *People v Sobolof, supra; People v Borcsok,* 107 AD2d 42).

The police activity here was more akin to that in *People v Grimaldi* (52 NY2d 611), in that a deliberate effort was made to surreptitiously overhear the defendant's conversations. In *Grimaldi,* the defendant was arraigned and assigned counsel. State Police investigators were unsuccessful in questioning him and arranged for the defendant, at his request, to be returned to his cell and to telephone his father. Once the

telephone was provided, unbeknownst to the defendant, the investigator hid and eavesdropped on the defendant's conversation. The Court of Appeals rejected the contention that the statements were admissible because they were not directly elicited by the police and held that since the police arranged, acquiesced in, and took affirmative advantage of the telephone call, the statements were obtained in violation of the defendant's right to counsel.

As a practical matter, I see no real difference between the trickery employed by the Attorney-General here and that used by the police in *Grimaldi.* In both cases the intent was the same—to unfairly obtain incriminating testimonial evidence from a defendant in the absence of his attorney, after his right to counsel had attached. There is no way that on the facts here it can be honestly said that the Sixth Amendment was not violated because the incriminating evidence was obtained by the prosecution " 'by luck or happenstance' " *(Kuhlmann v Wilson,* 477 US 436, 459, quoting *Maine v Moulton,* 474 US 159, 176).

In *Kuhlmann v Wilson (supra)* the police were investigating a murder which occurred during the robbery of a taxicab garage in the Bronx. The defendant, a former employee, had been recognized as one of the robbers. After he turned himself in, the defendant admitted being present during the robbery and described the robbers but claimed not to know their names. The defendant's cellmate was specifically instructed by the police "simply to 'keep his ears open' for the names of the other perpetrators" *(Kuhlmann v Wilson, supra,* at 439). While the defendant never revealed the names of the other perpetrators, he made an unsolicited statement to the cellmate inculpating himself *(Kuhlmann v Wilson, supra,* at 438-440). The distinction between the facts here and those in *Kuhlmann* is that in *Kuhlmann* the police were legitimately seeking information concerning the identity of the defendant's accomplices. In this case, unlike what occurred in *Kuhlmann,* Investigator Friedman was on a quest for inculpatory evidence from the defendant and his codefendant. There is no support in the record here for a finding that the defendant's statements were "spontaneously volunteered and not the result of 'inducement, provocation, encouragement or acquiescence' " *(People v Gonzales, supra,* at 939, citing *People v Maerling, supra,* at 302-303). On the contrary, this was a planned operation, a classic "set-up". By "intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel, the Government

violated [his] Sixth Amendment right to counsel" *(United States v Henry,* 447 US 264, 274).