OPINION OF THE COURT
Dominic R. Massaro, J.
*887 The question presented by this case is what scope of protection is to be accorded a cooperating witness, likewise a defendant who is represented by counsel.
As part of a plea bargain, the within defendant, Johnny Montes, agreed to testify against one Jonae Singleton. The agreement specified that in exchange for a plea of guilty to the crime of assault in the second degree (Penal Law § 120.05 [1]) and testimony inculpating Mr. Singleton at trial, Mr. Montes could obtain for himself the minimum allowable sentence, that is, a sentence of from l1/2 to 4x/2 years of incarceration. At the time of entering into the plea bargain, defendant agreed to the condition that his trial testimony "must be consistent with the [plea] allocution.”[1]
At trial, Mr. Montes’ testimony was sometimes evasive, oftentimes equivocal, and occasionally in sharp contrast with his plea allocution. Mr. Singleton, Mr. Montes’ former codefendant, the People maintain, was acquitted by jury verdict as a result of defendant’s failure to cooperate fully as promised. On the date of sentencing, the People sought to have the court enhance defendant’s sentence, or, in the alternative, rescind the conditioned plea bargain and force Mr. Montes to stand trial on a variety of charges contained in the indictment. Defendant contends that his assigned counsel was not given advance notice by the prosecution of two trial preparation sessions and, consequently, was not in attendance. He holds forth that US Constitution Sixth Amendment entitles him to the assistance of counsel under such circumstances and, since his request for counsel was ignored and the right violated, he should not now be made to suffer. Without the necessity of reaching the question of offending the Sixth Amendment, the court agrees. Defendant will be sentenced accordingly.
Lack of Counsel
At the outset, it is an inescapable observation in this case of apparent first impression in New York that a cooperating witness faces considerable risk in the course of trial preparation by his prosecutors. The court notes that the People were aware that Mr. Montes was represented by assigned counsel throughout the pendency of this matter. Nor do the People assert a waiver of counsel; rather, they aver that counsel was "out of town” and, in any event, his presence was not required because defendant was merely being prepared for what had previously *888 been acceded to and agreed upon by Mr. Montes with the advice of counsel. Notwithstanding, Mr. Montes states that he specifically requested counsel’s presence for his testimonial preparation on at least two occasions. At the time of the second trial preparation session, defendant claims that he was left alone with two police detectives who persisted in questioning him about unrelated criminal activity in his neighborhood. Mr. Montes refused to answer such inquiries in the absence of counsel. Defendant also claims that an additional attempt to have legal counsel present, through the efforts of a relative, was stymied. The People did not overcome these contentions at hearing; it is too late in the day for the State now to argue exception to the fundamental right of a defendant to the assistance of counsel.
New York Evolution
The institution of the right to counsel in American felony jurisprudence was a pointed rejection of earlier English common law (see, Powell v Alabama, 287 US 45 [1932]). While the right of a defendant charged with a felony to have the aid of counsel did not exist in England at the time our Constitution was formed, its denial was rejected by the Colonies before the Declaration of Independence.[2] Not only is it expressly guaranteed by the Sixth Amendment, but well ensconced in the Due Process Clause of the Fifth. "It is central to [the constitutional] principle that in addition to Counsel’s presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution” (United States v Wade, 388 US 218, 226 [1967]).
The creative dynamics of Federalism underscores New York’s long tradition of reading parallel clauses independently and affording broader protections. In referencing one of several specific areas, Chief Judge Kaye points to the substantive area of the right to counsel, which was set out in New York’s first Constitution, that of 1777, preceding the national Bill of Rights by more than a dozen years. "From earliest times, this right has been insisted upon in our case law and given wider scope than the corresponding federal right. The New York decisions upholding the right of counsel have been characterized as 'the *889 strongest protection of right to counsel anywhere in the country’ ”.[3] Thus, this constitutional tradition has developed on its own terms from the beginning of the State’s history, announced and insisted upon in old case law. "While the territory now embraced by the state of New York was a colony of Great Britain it was part of the common law that counsel should be assigned by the court for the defense of poor persons charged with crime” (People ex rel. Brown v Board of Supervisors, 3 How Prac [NS] 1, 3 [1885], affd 39 Hun 654 [1886], affd 102 NY 691 [1886]). Before any applicable statute came into force, it was the practice and the duty of the courts to make such assignments (see, People ex rel. Burgess v Risley, 66 How Prac 67 [1883]; People ex rel. Saunders v Board of Supervisors, 1 Sheld 517 [1875]; People ex rel. Hadley v Supervisors of Albany County, 28 How Prac 22 [1864]). Latter day statutes, as explained in People v Molineau (168 NY 264 [1901]), are codifications of this common-law and constitutional principle. Indeed, "[t]he right to counsel in this State has had a rich development under the State’s Constitution” (People v Blake, 35 NY2d 331, 338 [1974]; see also, People v Witenski, 15 NY2d 392 [1965]).
Continuing Tradition
A survey of the modern constructions of New York’s continuing embrace of Federalism can begin with People v Di Biasi (7 NY2d 544 [1960]), where our Court of Appeals went beyond the requirements of the Federal courts in finding that the right to counsel attaches upon the formal beginning of criminal proceedings, whether or not a defendant has retained legal counsel. In subsequent cases, State constitutional and statutory authority likewise formed the basis for decision making (see, People v Donovan, 13 NY2d 148 [1963]; People v Rodriguez, 11 NY2d 279 [1962]; People v Meyer, 11 NY2d 162 [1962]; People v Waterman, 9 NY2d 561 [1961]).
In People v Arthur (22 NY2d 325 [1968]), the Court of Appeals again went beyond Federal protections by holding that once legal counsel enters the proceeding, a defendant cannot be questioned in the absence of counsel unless counsel’s presence is affirmatively waived in the presence of counsel. In People v Hobson (39 NY2d 479 [1976]), the Court noted (at 483-484) that the State constitutional basis for the rule had *890 "extended constitutional protections of a defendant under the State Constitution beyond those afforded by the Federal Constitution” (see also, People v Smith, 62 NY2d 306 [1984]; People v Marrero, 51 NY2d 56 [1980]; People v Pinzon, 44 NY2d 458 [1978]; People v Singer, 44 NY2d 241 [1978]; People v Buxton, 44 NY2d 33 [1978]; People v Coleman, 43 NY2d 222 [1977]; People v Ramos, 40 NY2d 610 [1976] [whether defendant is represented by legal counsel is the burden of the People to ascertain]).
The principle of the right to counsel is founded on and guided by the provisions of section 6 of article I of the New York Constitution. It provides that "[i]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel” (see, People v Skinner, 52 NY2d 24, 28 [1980]; People v Cunningham, 49 NY2d 203 [1980]; People v Settles, 46 NY2d 154 [1978]). The letter and spirit of this progeny provides that agents of the State may not question a defendant in the absence of counsel (see, People v Cunningham, supra; People v Rogers, 48 NY2d 167 [1979]; People v Arthur, supra; see also, People v Hobson, supra; People v Settles, supra). Furthermore, this right to counsel is "indelible”, that is, "no effective waiver of counsel can be had in the absence of counsel” (People v Skinner, supra, at 33; see also, People v Hawkins, 55 NY2d 474 [1982], rearg denied sub nom. People v Laffosse, 56 NY2d 1032 [1982], cert denied 459 US 846 [1982]; People v Grimaldi, 52 NY2d 611 [1981]; People v Cunningham, supra).
In this State, then, the right to counsel, as to the time of its attachment and as to its waiver, is recognized more expansively than the protections afforded under Federal law (see, People v Grimaldi, supra; People v Rogers, supra; People v Settles, supra; People v Blake, supra). These broadly stated constitutional protections come to bear on the case at hand in that "in addition to minimizing the adversarial imbalance in trial preparation and presentation, the right to counsel protects an accused in pretrial dealings with the overwhelming, coercive power of the State” (People v Velasquez, 68 NY2d 533, 537 [1986]; see also, People v Skinner, supra; People v Settles, supra).
Moreover, the Criminal Procedure Law provides that "[t]he defendant has the right to the aid of counsel at the arraignment and at every subsequent stage of the action” (CPL 170.10 [3]). Traffic infractions aside, this right is assured regardless of the gravity of the charge or potentiality of sentence. It is noteworthy that under New York statutory law, the right in this *891 respect is similarly more expansive than its Federal counterpart. This is because the latter does not mandate assignment of counsel for indigent defendants in cases where the charges are below the felony grade and the sanction does not envision a sentence of imprisonment (see, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 170.10, at 12).
Post-Plea, Presentence
The question raised by the specific facts on this record goes to a defendant’s right to counsel in a criminal proceeding at a post-plea bargain, pretrial preparation session(s), the consequences of which at trial will be determinative of the defendant’s sentencing. Despite the rich legacy of the New York courts in jealously guarding the right, this aspect of its entitlement has yet to be addressed. An examination of the legal history of the right in New York within the framework of dual constitutionalism finds no basis as to why it would not remain firmly attached at what the court deems is yet another critical stage of these proceedings.
Furthermore, as has been amply illustrated by the case law, the application of the right to counsel following indictment, when it is clear, as here, that a defendant has an attorney, is well pronounced (see, People v Hawkins, supra; People v Miller, 54 NY2d 616 [1981]; People v Marrero, supra; People v Rogers, supra; People v Hobson, supra; People v Arthur, supra; People v Donovan, supra [any doubt about a lawyer’s presence or role on behalf of a defendant must be resolved in the defendant’s favor precluding questioning]; see also, People v Garofolo, 46 NY2d 592 [1979] [defendant’s statement barred because right of counsel attached despite lawyer’s unsuccessful attempt to contact defendant even though interrogators were not made aware of such efforts]).
Nor is the court unimpressed by the fact that our Court of Appeals has extended the right to counsel beyond the trial stage to posttrial parole revocation hearings (see, Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445 [1976]; People ex rel. Menechino v Warden, 27 NY2d 376 [1971]). In People ex rel. Donohoe v Montanye (35 NY2d 221 [1974]), the Court was explicit in its rejection of the more limiting Federal position.
Conclusion
It is suggested that the sought-after quality of Mr. Montes’ trial testimony and the avoidance of inconsistency in said *892 testimony may never have troubled these proceedings had the People proceeded ex abundanti cautela so as to facilitate counsel’s presence for defendant’s trial preparation. Clearly, the issue of the role and presence of counsel during a critical dispositive phase of a defendant’s case encompasses practical implications as well as constitutional ramifications.[4]
The within defendant, in custody, was brought to the Office of the District Attorney on two separate occasions ostensibly for trial preparation. The absence of assigned legal counsel in such instances is latent with the possibility for abuse and at variance with the fair administration of criminal justice. Mr. Montes’ testimonial cooperation and the level of sentencing was directly related to the educing of truthful evidence from him at trial consistent with his plea allocution. This equates with an interest deserving of safeguard. The People retained the final option either of recommending an enhancement of or the mitigated sentence promised defendant in connection with said testimony; indeed, the prosecution felt compelled to exercise the option against him, likewise setting the groundwork to reindict Mr. Montes on additional charges. Can there be any doubt that in this setting the State remains the cooperating witness’s adversary.[5]
*893 The scenario that unfolded here gives rise to dismay and cause for concern. Inasmuch as it is conceded that Mr. Montes never waived the right to counsel, the State had the affirmative obligation to respect it (see, e.g., People v Marincic, 2 NY2d 181 [1957]). Thus, an indispensable correlative to fairness was circumvented. Reasonable steps should have been taken to accommodate counsel who was known to be "out of town.” By not doing so, the court is persuaded that the People sought to exploit an opportunity for confrontation in the absence of counsel, a gross violation of Mr. Montes’ fundamental rights.
In the scheme of constitutional jurisprudence, the State courts are primary guarantors of constitutional rights, and, in this instance, New York is the ultimate one, "the immediate and visible guardian”[6] of said rights. Here, Mr. Montes was deprived of the assistance of counsel under New York law. Our State’s independent commitment to extending this fundamental guarantee to wider inclusion makes for the appropriate standard to be applied. This value is designed to afford the citizen, often ignorant of and uneducated about the intricacies of the law, and always in fear when confronted with the awesome prosecutorial machinery of the State, greater protection against potential abuse. It logically extrapolates into a continuing right to the assistance of counsel, retained or assigned, until final adjudication of all aspects of a criminal prosecution.
In its most valid view, the outcome of the pretrial preparation session(s) at issue, with the proffered testimony to be elicited during trial, posed serious detriment to defendant’s liberty interest. This is far too vital an interest essential to the well-being of society, not to speak of Mr. Montes’ individual stake, to allow it to be decided without the intended benefit of more encompassing protection.

. Montes, plea allocution, Aug. 12, 1996, at 15.

. Denial of counsel (except as to legal questions and aside from the case of treason) was steadily adhered to in England until 1836, when it was granted with respect to felonies (Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the State of the American Union, at 698 [8th ed 1927]).

. Kaye, Dual Constitutionalism, in Practice and Principle, 61 St John’s L Rev 399, 413 (1987), citing Galie, The Other Supreme Courts: Judicial Activism Among State Supreme Courts, 33 Syracuse L Rev 731, 764 (1982).

. The benefits provided by counsel during trial preparation of a cooperating witness are both multi-faceted and self-evident. It flows to a defendant, to be certain, but also serves prosecutorial utility. Not only does defense counsel have an obligation to zealously present the best possible representation and further the most favorable results on behalf of his client (see, Code of Professional Responsibility DR 7-101 [22 NYCRR 1200.32]; Rules of App Div, 1st Dept [22 NYCRR] § 604.1 [d]), who, as here, is at the mercy of the State which holds power over the final disposition of his case, but, by his presence, counsel can ameliorate his client’s anxiety and confusion. The monitoring of a prosecutor’s questioning and restricting the client’s responses to the limited scope of the case at hand guards against prosecutorial overreaching while protecting against further self-incrimination. The clarification of issues so as to enhance a client’s understanding of what specifics are expected to be related by him by way of his testimonial obligation in furtherance of an agreed-upon plea bargain is central to the process. Counsel can also negotiate another issue of paramount import to many a defendant, one raised herein: security provisions for safeguarding personal well-being of the client and his family in light of the client’s seeking a reward for the trading of information about his former criminal conspirators. Tending to these and other aspects of trial preparation inures to the benefit of the People by way of a more relaxed, informal and cooperative witness at trial.

. The pitfalls a cooperating defendant may encounter in the course of dealing with his prosecutors was recently acknowledged in United States v Ming He (94 F3d 782 [2d Cir 1996]). Recognition of the magnitude of those risks impelled the court to hold that a cooperating defendant could not be *893 debriefed without the assistance of counsel unless such assistance was affirmatively waived.

. Hamilton, The Federalist, No. 17, at 107 (Van Doren ed 1945).